**Marcy SCHUCK, Individually and on behalf of her infant son, et al.,
Appellants,**

**v.**

**Earl L. BUTZ, Secretary of Agriculture.**

**No. 72–1973.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 25, 1973.

Decided July 25, 1974.

Rehearing Denied Aug. 23, 1974.

Alan B. Morrison, Washington, D.C., with whom Peter H. Schuck, Washington, D.C., was on the brief, for appellants.

James F. McMullin, Asst. U.S. Atty., for appellee. Harold H. Titus, Jr., U.S. Atty. at the time the brief was filed, John A. Terry, Robert S. Rankin, Jr., and Gregory C. Brady, Asst. U.S. Attys., were on the brief for appellee. Garey G. Stark, Asst. U.S. Atty., entered an appearance for appellee.

Before BAZELON, Chief Judge, and McGOWAN and MacKINNON, Circuit Judges.

PER CURIAM:

On February 9, 1972, appellants filed a petition with the Secretary of Agriculture, pursuant to 7 C.F.R. § 1.28, asking him to impose an immediate ban on the addition of sodium nitrates and sodium nitrites (hereinafter referred to as nitrites) to meat products. Appellants further requested that the Secretary appoint a panel of "distinguished scientists" to determine the usefulness of nitrites in preventing botulism in meat products.[1]

On March 16, 1972, Assistant Secretary Richard Lyng responded to the petition in a letter which stated that the Department would not immediately prohibit all use of nitrites in meat. He asserted that there was no convincing evidence that the addition of nitrites to meat would result in an "adulterated" product.[2] He also pointed to evidence that the addition of nitrites may reduce the dangers of botulism in meat products, and suggested that a ban on nitrites would eliminate this benefit, perhaps unnecessarily. The letter concluded:

> A research effort to develop more information on nitrite is being carried out by the American Meat Institute Foundation representing principal members of the meat industry. The U.S. Department of Agriculture and the Food and Drug Administration are cooperating in that effort.[3]

We recognize the extreme importance and the seriousness of the problem at hand and are giving it priority attention. We believe that any action we take must be based on sound, scientific knowledge.

On May 3, 1972, appellants filed a complaint in the District Court, requesting "an order directing the defendant to repeal that portion of Regulations 318.-7[(c)](4) [4] which authorizes the use of nitrites in meat products . . ." The Department responded with a Statement of Reasons in which it said that the petition was denied because there was "no convincing evidence presented which indicated that the use of sodium nitrite or sodium nitrate, within the limits specified by the regulations, would result in a product that is hazardous to human health."[5] The Department offered studies in support of its position and responded to particular points and authorities raised in appellants' petition. The Statement of Reasons, including the studies and the responses to particular points raised by appellants, formed the basis for the Department's motion for summary judgment. A cross-motion for summary judgment was filed by appellants and, after a hearing, summary judgment was granted in favor of the Department.

On appeal, appellants have recognized for the first time that the relief sought by them at the administrative and trial court levels, namely, a ban on nitrites, is legally available only through a rule-making proceeding, held in accordance with 5 U.S.C. § 553 and 7 C.F.R. § 1.27, to repeal the departmental regulation that permits the addition of

---

1. Appellants also requested that all meat products containing nitrites be labeled accordingly. Eight days prior to the petition, the U. S. Department of Agriculture had published a proposed rule requiring such labeling. 37 Fed.Reg.No. 25, at 6. This request was therefore not pursued.

2. 21 U.S.C. § 601(m)(1) states that a product is adulterated "if it bears or contains any poisonous or deleterious substance which may render it injurious to health. . . ."

3. Paragraph 4 of the letter noted the creation, within the government, of "a panel of distinguished scientists" to continue earlier government studies of the problem.

4. 9 C.F.R. § 318.7(c)(4). Appellants inadvertently cited the regulation as 318.7(a)(4).

5. The Statement further noted that "although sodium nitrite was not specifically authorized as an additive to prevent the development of *Clostridium Botulinum*, it did not seem appropriate to the Department to ban its use when presently available evidence indicated its possible usefulness in preventing botulism and there was a lack of evidence demonstrating that . . . [it] would be dangerous to human health."

nitrites to fix color. Appellants have accordingly modified their request for relief "to ask only that the Secretary be required to hold a rule making proceeding under the Administrative Procedure Act . . . and his own regulations . . . with regard to the matters raised in the petition."

 Appellants' petition for a ban focused the Department's response on the ultimate validity of the rule permitting use of nitrites to fix color. Thus, the Department asserted in its Statement of Reasons that the petition did not present "the sound, scientific, and convincing evidence needed to make a final determination." A petition for rule making, involving public inquiry into the issues, may raise different questions and elicit different responses than a request for a final determination that the rule must be changed. The Department has not been asked to consider the advisability of a rule-making proceeding, and neither the Department's decision nor the administrative record has been shaped by reference to such a request. The Department, rather than this court, must be given the first opportunity to evaluate the need for a rule-making proceeding. *See* McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946).

Without passing on the sufficiency of the present record to support either a decision permitting the use of nitrites or a denial of a petition for rule making,[6] we note that the Department itself has recognized that the use of nitrites raises questions deserving of intensive study. Should appellants file a petition for rule making, new data from the Department's studies and the additional information appellants claim to have recently obtained will place the Department in a better position now to determine whether a rule making proceeding is desirable and, if it decides that rule making is not warranted, to develop a record relevant to such a decision.

We therefore affirm the grant of summary judgment, a disposition that leaves appellants free to petition the Secretary for a rule making proceeding on the possible repeal of 7 C.F.R. § 318.7 (c)(4).

It is so ordered. .

---

6. We do note, however, the Department's apparent acceptance, on appeal, of appellant's assertions that possible beneficial effects are not relevant to a determination whether a product is adulterated, and that the proper standard of proof is whether there is convincing evidence that the product "contains any poisonous or deleterious substance which *may* render it injurious to health." 21 U.S. C. § 601(m)(1) (emphasis added).