November 2, 1972.

**The PEOPLE OF the STATE OF CALIFORNIA and the Public Utilities Commission of the State of California, Petitioners,**

v.

**FEDERAL POWER COMMISSION,
Respondent,**

**Transwestern Pipeline Company,
Intervenor.**

**No. 71–1830.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 1973.

Decided Nov. 1, 1974.

Lawrence Q. Garcia, San Francisco, Cal., with whom J. Calvin Simpson, San Francisco, Cal., was on the brief, for petitioners.

Charles E. Bullock, Atty. E.P.C. with whom Leo E. Forquer, Sol., J. Richard Tiano, Deputy Sol., Gordon Gooch, Gen. Counsel and Francis C. Aelen, Atty. F. P.C., were on the brief, for respondent.

James W. McCartney, Houston, Tex., for intervenor, Transwestern Pipeline Co.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

BAZELON, Chief Judge:

This is a statutory review proceeding under the Natural Gas Act, 15 U.S.C. § 717r(b) (1970), brought by intervenor State of California to challenge a decision of the Federal Power Commission. That decision granted Transwestern Pipeline Company the right to "normalize" its accounting of depreciation deductions taken on all "pre-1970 property and post-1969 non-expansion property" after the Company had made an election under the Tax Reform Act of 1969, 26 U.S.C. § 167(l) (1970) to "normalize" accounting of depreciation deductions on post-1969 expansion property.[1] Petitioner State of California argued that this decision is inconsistent with the Tax Reform Act of 1969, is not supported by substantial evidence and is based upon an improper method of segregating "expansion" and "non-expansion" property. This case was stayed pending disposition by the Supreme Court and this Court of an appeal of the Commission's decision in Texas Gas Transmission Corp., 43 F.P.C. 824 (1970). The decisions of the Supreme Court and this Court on remand are now reported. FPC v. Memphis Light, Gas & Water Div., 411 U.S. 458, 93 S.Ct. 1723, 36 L. Ed.2d 426 (1973), on remand, 163 U.S. App.D.C. 130, 500 F.2d 798 (1974). We entered an order sua sponte on July 18, 1974 directing the parties to file memoranda on the question of whether the FPC decision in this case should be affirmed on the basis of the Memphis Light decisions. Petitioner in response to this order concedes that Memphis Light disposes of all its arguments except one. The FPC in its response to the sua sponte order argues that the Memphis Light decisions dispose of all petitioner's arguments.

The chief point of contention at this stage in the litigation concerns the FPC's use of the "formula" method of accounting in determining whether to permit a shift from "flow through" to "normalization" accounting on pre-1970 property and post-1969 non-expansion property. This method is authorized by Treas.Reg. § 1.167(l)–4(b)(2), (c) (1970). To put the contention in perspective it is necessary to briefly outline the nature of the shift from "flow through" to "normalization" and the reasons the FPC advances to permit that shift. Prior to the FPC decision in the Texas Gas case, a public utility subject to the Natural Gas Act was required to pass onto its consumers the tax savings generated by its double declining balance depreciation in the year in which such tax savings were generated.[2] Congress became concerned whether that policy deterred new investment and, therefore, decided that on all post-1969 property the public utility should have the right to "normalize" its accounting, that is, take accelerated depreciation on such property but for rate-making purposes report earnings as if straight line depreciation had been utilized. The tax savings from the accelerated depreciation were to be placed in a separate account to be used in later years when that accelerated depreciation was either recaptured or, due to the arithmetic of double declining balance depreciation, the depreciation deduction under that method was less than under straight line. The question quite naturally arose whether this change for post-1969 property

---

1. Transwestern Pipeline Co., 45 F.P.C. 1170 (1971). For a description of the effect of the Tax Reform Act of 1969 and the distinction between "normalization" accounting and "flow through" accounting, see FPC v. Memphis Light, Gas & Water Div., 411 U.S. 458, 93 S.Ct. 1723, 36 L.Ed.2d 426 (1973).

2. See Alabama-Tennessee Natural Gas Co., 31 F.P.C. 208 (1964), aff'd, 359 F.2d 318 (5th Cir.), cert. denied, 385 U.S. 847, 87 S. Ct. 69, 17 L.Ed.2d 78 (1966).

should be extended by the FPC to all pre-1970 property and all property purchased after 1969 to replace pre-1970 property (the so-called "non-expansion" property). The Supreme Court in its *Memphis Light* decision held that the Tax Reform Act of 1969 did not deprive the FPC of its discretion to permit public utilities subject to the Natural Gas Act to shift to normalization on pre-1970 property and post-1969 non-expansion property, thus altering earlier FPC decisions that the tax savings gained through accelerated depreciation must be passed onto the consumer in the year taken.

This Court on remand from that decision reviewed the FPC's exercise of discretion in the *Texas Gas* case to permit the pipeline company to shift to normalization on property not covered by the Tax Reform Act of 1969. The FPC's general conclusion, upheld in this Court's *Memphis Light* decision, was that the tax savings gained through accelerated depreciation on pre-1970 property and post-1969 non-expansion property would not remain constant but would in fact be eliminated after a period of years. To require the utility to flow-through for rate-making purposes the tax savings in the early years to consumers would mean that later consumers who would not receive the benefit of the savings would be subsidizing the earlier consumers. Furthermore, the change in tax savings would de-stabilize rates in general. The factual basis for this general conclusion was that the depreciable property base, consisting of pre-1970 property and post-1969 non-expansion property, would itself decline since by the FPC's calculations the Company would not be bringing enough re-

placement property on stream after 1969 to keep up the pre-1969 accelerated depreciation deductions. This Court in *Memphis Light* upheld this factual determination by noting that the FPC had before it data which indicated that Texas Gas annual plant retirements were far short of amount needed to maintain the depreciable property base.[3] The Transwestern annual plant retirement statistics are for purposes relevant to this point very similar.[4] Thus it is entirely reasonable for the FPC to conclude that the depreciable base of both Texas Gas and Transwestern would decline.

However, petitioner State of California raises an objection, apparently not considered in detail in our *Memphis Light* opinion,[5] that challenges the reasonableness of the FPC's conclusion. Since this is a very serious objection, we think it deserves more consideration than it was given in *Memphis Light*. Petitioner's objection may be summarized as follows. The relevant depreciable base for the FPC's determination must include all post-1969 non-expansion property. But non-expansion property is not a self-defining term. The definition chosen by the FPC was that authorized by Treas.Reg. § 1.167($l$)–4(b)(2), (c) (1970) which through a "formula" method attempts to distinguish between replacement and expansion property created by total post-1969 investment. The heart of this "formula" method is that the portion of total post-1969 investment which corresponds to the *original cost* of any property retired since 1969 is to be considered replacement or non-expansion property. "Under the formula method it is evident that flow-through plant [pre-1970 property and post-1969 non-expan-

---

3. 500 F.2d at 802–803.

4. *See* Transwestern Pipeline Co., 45 F.P.C. 1170, 1177 (1971). These figures are reproduced on p. 230 *infra*. These statistics coupled with the present shortage of natural gas, *see* FPC v. Louisiana Power & Light Co., 406 U.S. 621, 626, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); Transwestern Pipeline Co., 45 F.P.C. 1170, 1178–79

(1971), are sufficient to uphold the FPC decision, if we assume the propriety of the "formula" method. *See* Memphis Light, Gas & Water Div. v. FPC, 163 U.S.App.D.C. 130, 500 F.2d 798, 803–804 (1974).

5. 500 F.2d at 803 n. 27. The Court implies that it need not decide the validity of the "formula" method to uphold the FPC's decision.

sion property] cannot grow."[6] It is equally evident that if the replacement plant cannot grow beyond original cost, the depreciable base will by necessity shrink since only new *expansion* property can generate the early year accelerated depreciation deductions necessary to prevent lower depreciation deductions in later years. This instinctively obvious conclusion is supported by the evidence in this case. The FPC calculates that Transwestern would have to replace an average of $14,000,000 of property each year to maintain its present depreciation deductions. The record demonstrates that between 1962 and 1970 Transwestern on average replaced only about $1,000,000 of property *valued at original cost*. Petitioner does not dispute this; instead it argues that the FPC should not value replacement property or consider future retirement needs on the basis of *original cost* but rather on the basis of the cost necessary to produce that replacement property in the year in which it is brought on stream. In short, the petitioner argues that the FPC has adopted an artificially narrow view of the definition of replacement or non-expansion property through its reliance on the "formula" method approved by the Treasury Regulations. If this definition of non-expansion property is incorrect, petitioner argues, then the FPC's calculations concerning past retirements valued at original cost and its conclusion that replacement plant cannot grow are not supported by the evidence.

The FPC initially responds to this argument by stating that the *Memphis Light* opinion of this Court has already over-ruled such a contention. We do not think this is correct. The *Memphis Light* opinion relied in its finding of substantial evidence on data relating to the *original cost* of probable future retirements. 501 F.2d at 803. Therefore, while the opinion states in a footnote, *id.* n. 27, that it does not decide the validity of the formula method but does conclude there is substantial evidence that Texas Gas would have insufficient non-expansion investment to maintain its depreciation deduction, the opinion cannot have resolved the issue of whether *original cost* is the proper definition of replacement or non-expansion property. Furthermore, whatever were the facts in *Memphis Light*, it is clear in this case that there is no evidence at all in the record as to probable future cost of replacement property other than as valued at original cost of the property retired. If original cost is an improper method of determining the value of replacement property, the FPC's decision that depreciable base will shrink and correspondingly Transwestern's depreciation deduction on non-expansion property will decline would not be supported by any evidence in the record.[7]

■■■ However, we are unable to conclude that original cost as used in the formula method explicitly authorized by Treasury Regulations is an impermissable mode of determining the value of replacement property. In effect, petitioner is mounting an oblique attack on the Treasury Regulations as being inconsistent with the intent of Congress in the 1969 Tax Reform Act. However, unless otherwise indicated by statute or decision, the FPC is authorized to accept the formula method for rate-making pur-

6. Transwestern Pipeline Co., 45 F.P.C. 1170, 1177 (1971).

7. The FPC argues that two other considerations would support its decision. First, relying on the opinion in *Memphis Light*, 501 F.2d at 806, the FPC argues that normalization will improve the before-tax interest coverage of Transwestern's securities. Second, the FPC argues that the tax payments deferred through accelerated deductions and not passed onto consumers will generate capital needed by the natural gas industry in general and the Transwestern Pipeline Company in particular. The first argument does not appear to have been relied upon in the Commission's opinion in this case. The second argument was by our reading of the opinion not an independent ground for the FPC's decision. We thus do not determine whether that argument is supported by substantial evidence, an issue clearly not resolved by *Memphis Light*.

poses as a reasonable interpretation of the Tax Reform Act of 1969 since that interpretation is given by the agency with expertise in tax policy. *Cf.* Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 498–502, 64 S.Ct. 239, 88 L.Ed. 248 (1943). Second, if the FPC were to require regulated utilities to adopt one definition of replacement property for tax purposes and another for rate-making purposes, it might well be that the cost to the utility of administering such a complex dual system of accounting would be more than the potential savings to the consumer through re-definition of replacement property. Third, any definition of replacement property other than original cost might well be very difficult to administer. This consideration seems to be the rationale of the Treasury Regulations. The statutory scheme under which the FPC acts does not prevent it from considering the efficiency of its own administration of that scheme in exercising its statutory discretion.[8] However, we do not mean to intimate that the FPC would not be equally justified in reaching the opposite conclusion—that protection of consumer interests under the statutory scheme requires that a new definition of replacement property be found for rate-making purposes such that any possible tax savings are passed on to consumers. This weighing of consumer interests and administrative efficiency is a task properly delegated to the Commission and not this Court. Thus a future FPC perhaps more attuned to consumer interests might well take a different view of the proper balance of consumer interests and administrative efficiency. Certainly nothing in either

the Tax Reform Act of 1969 or general principles of administrative law require the FPC to defer to the judgment of the Treasury on the proper method of accounting for natural gas rate-making purposes, *i. e.* to determine whether normalization should be permitted on non-expansion property for rate-making purposes.

■ Our own review of the record in this case raises one additional issue which we feel constrained to note but which would not be appropriate as a ground of decision since it was not presented to the FPC for an initial ruling. We point out this issue for the guidance of the FPC in any future proceedings on the relation of depreciation deductions and rate-making. The FPC at various points in its opinion and briefs in this case refers to the fact that since the depreciable property base will decline, there can be no "tax savings" but only a "tax deferral" for the utility. Of course, the FPC is undoubtedly aware that a "tax deferral" is also a "tax savings" of sorts since the taxpayer has the use of the money which would be used to pay the tax for the period during which the tax is deferred.[9] The use value of or interest on the deferred tax payment will under the FPC's own reasoning not be eliminated in later years. Thus present consumers should be given credit for that use value. Apparently, the FPC at present only deducts the interest on or use value of the money in the special account established to hold the deferred tax payment from the utility's rate base.[10] It appears to us, unfortunately without the benefit of FPC consideration of the issue, that this action is not sufficient to fully account

8. *Cf.* Mobil Oil Corp. v. FPC, 417 U.S. 283, 94 S.Ct. 2328, 2355–2356, 41 L.Ed.2d 72 (1974) ; Wisconsin v. FPC, 373 U.S. 294, 313–314, 83 S.Ct. 1266, 10 L.Ed.2d 357 (1963).

9. Indeed, the use value of deferred tax payments has been considered important enough by taxpayers to have resulted in some of the most significant tax litigation since the passage of the federal income tax. *See, e. g.,* United States v. Bayse, 410 U.S. 441, 93 S.

Ct. 1080, 35 L.Ed.2d 412 (1973) ; Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956) ; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920) ; United States v. Drescher, 177 F.2d 863 (2d Cir.), cert. denied, 340 U.S. 821, 71 S.Ct. 53, 60, 95 L.Ed. 603 (1950).

10. Brief for the FPC, at 24–25 ; *cf.* Transwestern Pipeline Co., 45 F.P.C. 1170, 1182 (1971).

for the tax savings represented by the use value of the deferred tax. However, since the petitioner has not raised this issue before the Commission, this Court may not consider it on appeal.[11] Therefore, we must and do affirm the Commission's decision in this case.

Affirmed.

11. Petitioner has thus not exhausted its administrative remedies. *See* Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S. Ct. 459, 82 L.Ed. 638 (1938); Schuck v. Butz, 163 U.S.App.D.C. 142, 500 F.2d 810 (1974). To be sure, petitioner did argue that the reserve account containing the deferred tax payment is a consumer loan to the utility. But that argument is not substantially similar to the argument advanced in the text.