**UNITED STATES of America, Plaintiff,**

v.

**AN ARTICLE OF FOOD CONSISTING OF THE FOLLOWING, ETC.,** Defendant.

**Civ. Nos. 82–0505 GG, 82–0506 and 82–0507.**

United States District Court, D. Puerto Rico.

April 3, 1984.

Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., for plaintiff.

José A. Acosta-Grubb, Fiddler, Gonzalez & Rodriguez, San Juan, P.R., for Cerveceria India, Inc.

Herman W. Colberg, Reichard, Colberg & Calaf Law Offices, San Juan, P.R., for Coco-Rico, Inc.

## OPINION AND ORDER

GIERBOLINI, District Judge.

These are three *in rem* actions brought by the United States against three independently-manufactured and owned lots of soft drink compounds alleging that each lot is adulterated within the meaning of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. Section 342(a)(2)(C) since it contains potassium nitrate, an unsafe food additive under 21 U.S.C. Section 348.

Plaintiff has filed a motion for summary judgment in all three cases. The magistrate to whom this matter was referred rendered a report on December 1, 1983, recommending that summary judgment be granted in the three cases since first, there is no material question of fact, and second, the plaintiff has established it is entitled to judgment as a matter of law. To date, no objection to said report has been filed by claimant, Coco Rico, Inc.[1] (Coco Rico or claimant). Consequently, a *de novo* determination is not required. *See* 28 U.S.C. 636(b)(1)(C).

The above notwithstanding, we have carefully examined the record of these cases and made an independent evaluation of the facts involved and the applicable law.

A brief summary of the procedural history is necessary. On March 24, 1982, the United States Marshal for this District seized the articles proceeded against in all three cases pursuant to warrants of seizure issued by this Court. By Order of April 28, 1982, we granted plaintiff's motion to consolidate the three complaints.

Thereafter, on June 1, 1982, this Court granted the motion to intervene filed by Coco Rico as claimant of the articles pursuant to Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims and 21 U.S.C. 334.

On August 12, 1982, at an in chambers hearing held before the magistrate, it was agreed by the parties that a motion for summary judgment and its reply would be filed by the respective parties in order to accelerate the proceedings in the above captioned cases. Accordingly, plaintiff was granted until August 12, 1982 to file its motion for summary judgment, and Coco Rico was required to respond by August 19, 1982. Plaintiff filed its motion for summary judgment on August 19, 1982, however, the motion included the caption of Civil Case No. 82–0506 only. After considering plaintiff's motion and Coco Rico's failure to oppose or file a motion for extension of time in Civil Case No. 82–0506, we granted plaintiff's motion for summary judgment as to the aforementioned case only.

Subsequently, on September 22, 1982, plaintiff filed a motion requesting judgment *nunc pro tunc* explaining that plaintiff intended that its motion for summary judgment be dispositive of all three cases. This motion was denied. Therefore, the proceedings in Civil Case Nos. 82–0505 and 82–0507 are still pending our consideration of the motions for summary judgment.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings,

---

[1] After the drafting of this opinion was completed we received claimant's opposition to the magistrate's report and recommendation. It appears that in addition to the ten days accorded to oppose the magistrate's report, claimant requested an additional fifteen days to file its opposition. The extension was granted, however, claimant did not file its opposition until the term had expired. Thus, it was untimely filed. Notwithstanding, we have considered the arguments raised therein but find them unpersuasive.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". In ruling on such a motion, the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party. *Stepanischen v. Merchants Despatch Transportation Corporation*, 722 F.2d 922 (1st Cir. 1983); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

■ Furthermore, Rule 56(e) provides that once a motion for summary judgment has been made and properly supported, the non-moving party may not rest upon mere allegations, but must instead reply setting forth specific facts showing that there is a genuine issue for trial. If a movant has alleged specific undisputed facts that entitle it to summary judgment as a matter of law, then the burden shifts to the opposing party to show that summary judgment is appropriate. *Nicholas Acoustics & Specialty Co. v. H & M Construction Co.*, 695 F.2d 839, 844 (5th Cir.1983).

It is unrefuted that potasium nitrate is an ingredient in a coconut concentrate manufactured by claimant Coco Rico. The coconut concentrate is distributed to various soft drink manufacturers who add the concentrate to their soft drink compound.

The thrust of the government's argument is that potassium nitrate is an unsafe food additive, *per se*, when used in coconut concentrate or soft drinks because the Food and Drug Administration (F.D.A.) has approved neither a food additive regulation permitting such a use of potassium nitrate nor an investigational exemption for such a use as required by 21 U.S.C. Section 348(a). Moreover, the government contends that no evidence of the safety of potassium nitrate in beverages has been submitted to the F.D.A. for its approval of the additive, this being by itself a basis for condemning the subject articles of food. Additionally, according to the affidavits of Dr. Shibko

and Dr. Wade in support of the government's motion for summary judgment, the use of potassium nitrate in food may present a significant health hazard since it belongs to a class of chemicals, nitrates and nitrites that, once ingested, are known to convert under certain circumstances into nitrosamines, a potent cancer agent. (See Exhibits C and D of government's motion).

Conversely, claimant alleges that summary judgment should not be granted since it has presented sufficient evidence to create a genuine issue of fact for trial as to whether potassium nitrate is an unsafe food additive.

Claimant's argument is that nitrates/nitrites are not within the designation of food additives. This contention is buttressed by the affidavit submitted by its expert, Ms. Caragay which is accompanied by four exhibits. She states that she is in agreement with the opinion of C. Jelleff Carr as stated in "The Nitrate-Cancer Controversy" article (Exhibit D of claimant's motion filed on November 12, 1982) that nitrates/nitrites are not within the designation of food additives, but are considered prior sanctioned because of the approval of their use by the F.D.A. and the United States Department of Agriculture (U.S.D.A.) prior to the 1958 Food Additives Amendments to the Food, Drug and Cosmetic Act.

There are several provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Sections 301–392 (1976) which are relevant to our discussion.

21 U.S.C. Section 342(a)(2)(C) provides that "[A] food shall be deemed to be adulterated ... if it is, or it bears or contains, any food additive which is unsafe within the meaning of section 348 of this title ...".

Pursuant to Section 348, a food additive is presumed to be unsafe unless the Secretary of Health and Human Services has previously promulgated a regulation "prescribing the conditions under which such additive may be safely used" or providing for "investigational use by qualified experts". 21 U.S.C. Section 348(a) and (i);

*United States v. An Article of Food,* 678 F.2d 735, 737 (7th Cir.1982).

The Act defines "food additive" as follows:

The term "food additive" means any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food (including any substance intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food; and including any source of radiation intended for any such use), if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures (or, in the case of a substance used in food prior to January 1, 1958, through either scientific procedures or experience based on common use in food) to be safe under the conditions of its intended use . . .

21 U.S.C. Section 321(s).

Until 1958, the government carried the burden of proving that a food additive was "unsafe". See S.Rep. No. 2422, 85th Cong.2d Sess. 1 (1958); H.R.Rep. No. 2284, 85th Cong.2d Sess. 1 (1958), U.S.Code Cong. & Admin.News 1958, p. 5300. However, the Food Additives Amendments of 1958 shifted this burden by creating a presumption that a food additive is "unsafe" until proven otherwise, unless the additive had been exempted by statute or regulation. 21 U.S.C. Section 348(a) (1976); *Public Citizen v. Foreman,* 631 F.2d 969, 972 (D.C.Cir.1980).

■ As stated earlier, claimant argues that nitrates have been exempted under the statutory exception dealing with "any substance used in accordance with a sanction or approval granted prior to September 6, 1958 . . .". 21 U.S.C. Section 321(s)(4).

The claim is that this exemption also denominated the "prior sanction" provision, relieves the F.D.A. of responsibility for examining food additives which have already been recognized as safe by the federal government. We find that the exception is not applicable to this case.

Nitrites have been used for centuries to cure meat [2] and perform a dual function. First, they protect the color and flavor of the cured meat. Second, they inhibit the growth of *Clostridium botulinum* spores and as such protect against botulism contamination. *Public Citizen, supra,* at 631 F.2d 972–973. Even though the color-fixing properties of nitrites are no longer of paramount interest, their use as a preservative for which they have had U.S.D.A. approval, continues unchanged.

Furthermore, regulations promulgated pursuant to the prior exemption provision provide that "[a] prior sanction shall exist only for a specific use(s) of a substance in food, i.e., the level(s), condition(s), product(s), etc., for which there was explicit approval by the [F.D.A.] or [U.S.D.A.] prior to September 6, 1958". 21 C.F.R. Section 181.5 (1979).

Clearly, the narrow scope of the above cited regulation prohibits the invocation of a prior sanction to justify greater number of products for which the substance might be used. Thus, the prior sanction granted to nitrites as a preservative in the preparation of meat and meat-food products only exists for that specific use and for that specific product. It cannot be extended to its use in beverages. Accordingly, we find that potassium nitrate is a food additive, and, therefore, claimant must shoulder the burden of proving that it is "generally recognized as safe" or persuade the F.D.A. to grant an exemption under 21 U.S.C. Section 348 for its specific use in beverages.

■ In the present case, claimant has failed to carry its burden. Even though,

---

**2.** Nitrates are chemical compounds produced by the bacterial action on organisms containing nitrogen. Nitrates are related chemical substances that are common in fertilizers. Bacteri-

al action converts nitrates into nitrites. Except as specifically noted, the term nitrates will be used to refer to potassium nitrite. *Public Citizen, supra,* at 972 n. 6.

the expert testimony and other documents submitted by claimant reveal that nitrites have been used in certain foods for centuries, there is no evidence that potassium nitrate is generally recognized among experts as safe for its intended use in beverages. Thus, there is no controversy of fact present herein since claimant has failed to create a genuine issue of fact for trial as to whether potassium nitrate is an unsafe food additive for its specific use in beverages. In fact, plaintiff's expert was of the opinion that the levels of potassium nitrate contained in the seized beverages would be unsafe for human consumption. See Exhibit C of government's motion, paragraph 8a–g.

A similar conclusion was reached by Dr. Wade, a food toxicologist. Dr. Wade stated that he was unaware of any studies establishing the safety of potassium nitrate for addition to any kind of beverage. See Exhibit D of government's motion.

Finally, claimant argues that the F.D.A. does not have jurisdiction to regulate its product because the seized articles were not in interstate commerce since they are manufactured in and intended for sale in Puerto Rico.

It is axiomatic that a seized article has travelled in interstate commerce within the meaning of Sections 331(k) and 334 of the Act, if it is held for sale after one or more of its ingredients has travelled in interstate commerce. *United States v. Dianovin Pharmaceuticals, Inc.*, 475 F.2d 100, 102–3 (1st Cir.1973), *cert. denied*, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 65 (1973); *United States v. Cassaro, Inc.*, 443 F.2d 153 (1st Cir.1971). In the instant case, claimant in its answer admits to paragraph 3 of the complaint, which states that the ingredient potassium nitrate was shipped interstate from New York to Puerto Rico before being added to the concentrate which was, in turn, added to the beverages held for sale in Puerto Rico. Thus this is sufficient to establish interstate commerce,[3] and provide F.D.A. with authority to regulate this matter.

In view of the foregoing, we approve the Magistrate's Report of December 1, 1983. Plaintiff's motion for summary judgment is granted since plaintiff has clearly established that there is no genuine issue as to any material fact and that it is entitled to summary judgment as a matter of law.

It is ordered that the complaints in the above captioned cases be and are hereby dismissed.

The clerk shall enter judgment accordingly.

SO ORDERED.

---

**3.** The term "interstate commerce" means, *inter alia*, commerce between any state or territory and any place outside thereof. *See* 21 U.S.C. Section 321(b).