**UNITED STATES of America, Plaintiff,**

**v.**

**302 CASES, 321 CASES, AND 420 CASES, MORE OR LESS, OF FROZEN SHRIMP, CURRENTLY LOCATED AT AMERICOLD CORPORATION, 1601 North 50 Street, Tampa, Florida, Stored to the Account of Central Seaway Company, Inc., Each Case Containing 6/2 Kilogram Unlabeled Packages, Labeled in Part: (Case) " * * * Frozen Peeled Shrimp with Tail on Zhejiang Foreign Economic Relations and Trade Development 91/110 [or 110/130 or 150/200] * * * Net Wt: 2KGX6* * *," Defendants.**

No. 98–476–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 5, 1998.

Patricia A. Willing, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, for U.S.

Janette Meredith Wester, Ruden, McClosky, Smith, Schuster & Russell, P.A., Tampa, FL, for Central Seaway Co., Inc.

### ORDER ON PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Plaintiff's, United States of America, Amended Motion for Summary Judgment, (Docket No. 15), filed August 28, 1998. Claimant, Central Seaway Company, Inc., filed a response, (Docket No. 16), to Plaintiff's Amended Motion for Summary Judgment on September 10, 1998.

### STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The plain language of Rule 56(c) mandates that the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue of material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of the case with

respect to which that party has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of genuine issues of material fact. *See id.* That burden can be discharged by "showing ... that there is an absence of evidence to support the non-moving party's case." *See id.* at 323, 325, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505.

In determining whether a material fact exists, the court must consider all the evidence in a light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir.1979)(quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969)).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of "nothing more than a repetition of his conclusional allegations" summary judgment is not only proper but required. *See Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982).

## BACKGROUND

On March 4, 1998, Plaintiff filed a Verified Complaint for Forfeiture *in Rem,* (Docket No. 1), seeking the seizure, condemnation, and forfeiture of the Defendant shrimp, in accordance with the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–395. Concurrent with the filing of the Verified Complaint for Forfeiture *in Rem,* (Docket No. 1), Plaintiff filed a Motion for Issuance of Warrant of Arrest *in Rem,* (Docket No. 2). The Court ordered the issuance of a Warrant for Arrest *in Rem,* (Docket No. 3), on March 4, 1998. Pursuant to this warrant, process was executed upon the Defendant shrimp. On March 18, 1998, Claimant filed an Answer, (Docket No. 6), to Plaintiff's Verified Complaint for Forfeiture *in Rem,* (Docket No. 1), requesting permission to submit the seized articles to expert analysis, to determine whether the items were decomposed or adulterated under 21 U.S.C. § 342(a)(3). Claimant also requested in the Answer, (Docket No. 6), that reexportation be permitted pursuant to 21 U.S.C. § 334(d)(1), 21 U.S.C. § 334(e), and 21 U.S.C. § 381(e). Concurrent with the filing of the Answer, (Docket No. 6), Claimant filed a Statement of Claim, (Docket No. 7).

Plaintiff filed the original Motion for Summary Judgment, (Docket No. 9), on July 24, 1998. Claimant responded, (Docket No. 10), in opposition to Plaintiff's Motion for Summary Judgment, (Docket No. 9), on August 11, 1998. Claimant filed a Motion for Exportation, (Docket No. 11), on August 11, 1998, which admitted that Defendant shrimp are decomposed and liable for condemnation under 21 U.S.C. § 334(a). Plaintiff responded, (Docket No. 13), to Claimant's request for exportation on August 27, 1998. On August 28, 1998, Plaintiff filed an Amended Motion for Summary Judgment, (Docket No. 15). Claimant's response, (Docket No. 16), to Plaintiff's Amended Motion for Summary Judgment was filed on September 10, 1998.

Plaintiff's Statement of Facts include the following:

1. On October 7, 1997, Singleton Seafood Co. (Singleton) requested the National Marine Fisheries Service (NMFS) to inspect four (4) lots of shrimp for weight, count, quality, and condition. Singleton intended to purchase these lots from Claimant, on the condition that the shrimp was of sufficient quality and weight. NMFS sampled three (3) of the four (4) lots of frozen Chinese shrimp, which were packed by the

Zhejiang Foreign Economic Relations and Trade Development Corporation. NMFS analysis showed that the samples contained poor quality shrimp and that two (2) contained insect filth and rust fragments. Singleton notified Claimant on October 24, 1997, that it was rejecting lot numbers 96205, 96206, 96213. (Docket No. 15, Paragraph 1)

2. On the basis of its findings that the three (3) lots of shrimp contained evidence of decomposition and filth, NMFS sent the Florida District Office of the United States Food and Drug Administration (FDA) a Notice of Violation and Request for Action on October 31, 1997. (Docket No. 15, Paragraph 2).

3. In response, the FDA has conducted an investigation into lot numbers 96205, 96206, and 96213. All three (3) lots, which have been shipped in interstate commerce, are in the possession of Americold Corporation and are stored to the account of the Claimant. (Docket No. 15, Paragraph 3).

4. On November 4 and 6, 1997, FDA collected official samples from all three (3) lots of the frozen Chinese shrimp. The samples were kept frozen and shipped, via overnight delivery, to the FDA's Southeast Regional Laboratory, in Atlanta, Georgia. (Docket No. 15, Paragraph 4).

5. The FDA sample Custodian at the Southeast Regional Laboratory, received the frozen samples and stored them in a freezer until the laboratory was prepared to begin the analysis. When the laboratory was ready, the custodian transferred the shrimp to five (5) FDA analysts, who are experts in organoleptic, chemical, and microscopic analysis of seafood, and who examined the samples for decomposition and filth. (Docket No. 15, Paragraph 5).

6. Based upon the results of the tests conducted by the analysts, the FDA has determined that the shrimp seized in this case are decomposed and contained filth. (Docket No. 15, Paragraph 6).

7. On March 4, 1998, the United States filed a Verified Complaint for Forfeiture *in Rem*, pursuant to 21 U.S.C. § 334, for the seizure, condemnation, and forfeiture of the Defendant shrimp as an article of food which is adulterated, within the meaning of 21 U.S.C. § 342(a)(3), when introduced into, while in, or while held for sale after shipment in, interstate commerce, in that the Defendant shrimp consist, in whole or in part, of decomposed shrimp. (Docket No. 15, Paragraph 7).

8. On March 5, 1998, the United States Marshals Service arrested the Defendant shrimp pursuant to a Warrant of Arrest *in Rem* issued by this Court. (Docket No. 15, Paragraph 8).

9. Notice of Arrest and Seizure of the Defendant shrimp was published in *La Gaceta*, a newspaper of general circulation in Hillsborough County, Florida, on March 20, March 27, and April 3, 1998. (Docket No. 15, Paragraph 9).

10. Claimant has filed the only claim to the Defendant shrimp, and the time within which additional claims to the defendant shrimp could be filed has expired. (Docket No. 15, Paragraph 10).

Claimant's statement of facts include the following:

1. Claimant is an importer of food products into the United States. (Docket No. 16, Page 3).

2. In July, 1997, Claimant conditionally purchased two (2) loads of frozen shrimp, each containing four-hundred twenty (420) and nine-hundred thirty-five (935) cartons of frozen shrimp, which included the Defendant shrimp, from Zhejiang Foreign Economic Relations and Trade Development Corporation. (Docket No. 16, Page 4).

3. The two (2) loads of frozen shrimp were conditionally sold to Singleton, prior to leaving the China port. (Docket No. 16, Page 4).

4. The two (2) loads of shrimp were imported by the Claimant into the United States in September, 1997, through the port of Los Angeles and a customs entry was filed for each load. The shipments were admitted by the FDA without inspection and were released into Claimant's custody on September 17, 1997. (Docket No. 16, Page 4).

5. Before this shipment left China, Claimant agreed to sell these two (2) loads of Defendant shrimp to Singleton, having its

principal place of business in Tampa, Florida, under the condition that the goods were first tested and must pass Singleton's incoming product quality control specifications. (Docket No. 16, Page 4).

6. Singleton delegated the testing of the Defendant shrimp to the NMFS.

7. Since NMFS found the shrimp adulterated, Singleton never paid for the goods. As is standard procedure in the seafood industry, a buyer accepts and pays for goods only after performing a quality control examination of the merchandise and determining that the goods are saleable and not otherwise defective. (Docket No. 16, Page 5).

8. The State of Florida placed a "stop sale" Order on the shrimp pursuant to section 500.172(1), of the Florida Statutes (1995). Claimant immediately began discussions with the Florida Department of Agriculture to provide for the exportation of the Defendant shrimp. (Docket No. 16, Page 5).

9. Given the condition of the goods, Claimant will not obtain repayment of the purchase price, which was approximately $78,515.40, until and upon return to the supplier of the goods. Until the goods are returned, no repayment can be obtained and the Claimant suffers further economic loss, including accruing storage charges. Claimant has no desire to sell the adulterated goods and thereby injure its business reputation. (Docket No. 16, Page 5).

10. Claimant previously purchased eleven (11) containers of frozen shrimp from the same supplier, none of which were found to be adulterated. Claimant would not knowingly accept, purchase or sell adulterated food and would not have paid for the Defendant shrimp had Claimant had any reason to believe that it contained adulterated shrimp. Claimant, further, had no reason to believe that the articles were adulterated prior to the release of the goods from Customs' custody. (Docket No. 16, Page 6).

11. The Defendant shrimp were shipped in sealed cartons, each carton containing [six blocks (of 2 kg. each) ] sealed in plastic. Upon Claimants information and belief, none of the cartons or blocks containing the Defendant shrimp were ever opened subsequent to importation, except for cartons subject to examination or inspection. The Defendant shrimp became adulterated, as alleged in the Complaint, prior to importation of the goods into the United States. (Docket No. 16, Page 6).

## DISCUSSION

### Summary Judgment

To prevail under a motion for summary judgment it must be shown that no material issues of fact exist under the statutory requirements for condemnation. *See Celotex,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is an appropriate means of disposing cases involving adulterated foods. *See United States v. 45/194 Kg. Drums of Pure Vegetable Oil,* 961 F.2d 808 (9th Cir.1992), *cert. denied,* 506 U.S. 940, 113 S.Ct. 375, 121 L.Ed.2d 287 (1992); *United States v. An Article of Food,* 584 F.Supp. 230 (D.P.R.1984), *aff'd,* 752 F.2d 11 (1st Cir. 1985).

The statutory requirements for condemnation of the Defendant shrimp are that the Defendant shrimp must be an article of food, under 21 U.S.C. § 321(f); that the Defendant shrimp are adulterated, under 21 U.S.C. § 342(a)(3); and that the Defendant shrimp were held for sale after shipment in interstate commerce, under 21 U.S.C. § 334(a)(1). *See United States v. H.B. Gregory Co.,* 502 F.2d 700 (7th Cir.1974); *United States v. Ocean Perch Fillets,* 196 F.Supp. 255, 271 (D.Maine 1961)(quoting *A.O. Andersen & Co. v. United States,* 284 F. 542 (9th Cir.1922); *United States v. 43 ½ Gross Rubber Prophylactics,* 65 F.Supp. 534 (D.Minn.1946); *Gellman v. United States,* 159 F.2d 881 (8th Cir.1947); *United States v. 935 Cases,* 65 F.Supp. 503, 504 (N.D.Ohio 1946)).

The FDCA defines "food" as "articles used for food or drink for man or other animals..." 21 U.S.C. § 321(f)(1998); *see also Ocean Perch Fillets,* 196 F.Supp. at 255–275. In the present case, the Defendant shrimp are packaged and intended to be used for food. (Docket No. 16, Page 6). The Claimant has not asserted that the Defendant shrimp are not "food" within the meaning of 21 U.S.C. § 321(f). (Docket No. 16).

Under 21 U.S.C. § 342(a)(3), an article of food is adulterated if it "consists in whole or in part of any filthy, putrid, or decomposed substance...." *See United States v. 484 Bags,* 423 F.2d 839, 841 (5th Cir.1970); *United States v. 1,200 Cans, Pasteurized Whole Eggs,* 339 F.Supp. 131, 137 (N.D.Ga.1972); *Ocean Perch Fillets,* 196 F.Supp. at 276. Any amount of decomposition will satisfy the requirements of 21 U.S.C. § 342(a)(3), it is not necessary that the food contain certain percentages of decomposition to be adulterated. *See A.O. Andersen & Co. v. United States,* 284 F. 542, 545 (9th Cir.1922).

■ The FDA's determination that the Defendant shrimp consist of decomposed shrimp and filth satisfies the statutory requirement for an article of food to be classified as "adulterated". (Docket No. 15). Furthermore, Claimant admits that the Defendant shrimp are adulterated within the statutory meaning. (Docket No. 16, Page 2).

■ The last requirement needed to enter an order of condemnation is that the adulterated articles were seized while held for sale after shipment in interstate commerce within the meaning of 21 U.S.C. § 334(a). Interstate commerce has been defined, under 21 U.S.C. § 321(b), as commerce that occurs either between states or between a state or territory and any other place outside of that state or territory. *See 230 Boxes, More or Less, of Fish v. United States,* 168 F.2d 361, 363 (6th Cir.1948). An article is considered "for sale" if it is not going to be consumed by the producer. *See Hipolite Egg Company,* 220 U.S. at 50, 31 S.Ct. 364; *H.B. Gregory Co.,* 502 F.2d at 704; *United States v. Cassaro,* 443 F.2d 153, 155–56 (1st Cir.1971).

■ The Defendant shrimp were admitted into interstate commerce when the FDA admitted the Defendant shrimp into the United States. The Defendant shrimp have been held for sale after their shipment into interstate commerce, which is shown by their entrance into the United States and by the Claimants conditional sale of the Defendant shrimp to Singleton. (Docket No. 16).

The Court finds that Claimant has not asserted anything to show that there is a genuine issue of material fact in existence regarding the condemnation of the Defendant shrimp. The Claimant has shown the

Court no reason why Plaintiff's Amended Motion for Summary Judgment on the issue of condemnation of the Defendant shrimp should not be granted.

### Costs

■ An award of costs against a claimant, under 21 U.S.C. § 334(e), is required when a decree of condemnation has been entered against an article that the claimant has an interest in. *See United States v. Articles of Drug...Penapar VK,* 458 F.Supp. 687, 688 (D.Md.1978)(quoting 21 U.S.C. § 334(e)(1998)). A claimant's withdrawal from the case, before the final decree of condemnation is entered, does not even waive the awarding of costs against him. *See id.* at 688–89. In the case at hand, Claimant has filed a Statement of Claim, (Docket No. 7), regarding the Defendant shrimp, which established that Claimant has an interest in the Defendant shrimp. Accordingly, it is

ORDERED that Plaintiffs Amended Motion for Summary Judgment, (Docket No. 15), be granted, only on the issue of condemnation of the Defendant shrimp; the Clerk of the Court is directed to enter judgment consistent herewith; and the Motion for Summary Judgment (Docket No. 9) be denied as moot. The Defendant shrimp, as identified in this action, are therefore condemned pursuant to 21 U.S.C. § 334(a), in that these items are adulterated while held for sale after shipment in interstate commerce, within the meaning of 21 U.S.C. § 342(a)(3). An award of costs and fees is entered against Claimant, Central Seaway Company, Inc. Counsel for Claimant and Counsel for the government shall confer regarding an accounting of the costs and expenses due to be paid under the provisions of 21 U.S.C. § 334 and other applicable statutes. To the extent the parties can agree on the proper costs and expenses, Claimant shall pay that agreed upon amount within twenty (20) days. If the parties are unable to agree as to the costs, Claimant and the United States are to file pleadings with the Court within ten (10) days, setting forth their differences and any argument in support of their positions.