UNITED STATES of America. Plaintiff,

v.

**ALL ARTICLES OF DRUG CONSISTING OF FINISHED AND IN-PROCESS PRODUCTS (Including Active Pharmaceutical Ingredients), WHICH ARE LABELED AS CONTAINING L–TYROSINE and bear one or more of the following statements: "actifer,"**

---

"with 1–tyrosine complex," "booster," "accelerator," "accelerates . . .," and all articles of drug that bear "spf" anywhere on the label, in any size or type container, labeled or unlabeled, which were manufactured by and located at Creative Labs, Inc., 1325 Eagandale Court and/or 2755 Highway 55, Eagan, Minnesota, Defendants.

No. CIV.98–2400 (JRT/FLN).

United States District Court,
D. Minnesota.

March 31, 2002.

Gerald C. Kell, Senior Trial Counsel, Office of Consumer Litigation, United States Department of Justice, Washington, DC, and Mary Jo Madigan, Assistant United States Attorney, Office of the United States Attorney, Minneapolis, MN, for plaintiff.

Frederick H. Branding and James M. Ellis, Bell Boyd & Lloyd LLC, Chicago, IL, and Richard J. Wegener and Kari L. Wraspir, Oppenheimer Wolff & Donelly LLP, Minneapolis, MN, for claimant.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

TUNHEIM, District Judge.

This action is an *in rem* proceeding brought by plaintiff the United States of America ("the government") pursuant to 21 U.S.C. § 334. The products at issue in this action include tanning accelerators, sunscreen products, and the raw materials for making such products. Claimant Creative Labs ("Creative") seeks leave to withdraw its claims to the articles of drugs that are currently held under seizure by the government. This matter is now before the Court on the government's objections to the Report and Recommendation of United States Magistrate Judge Franklin L. Noel dated November 28, 2001. The Court has conducted a *de novo* review of the government's objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court adopts the Report and Recommendation of the Magistrate Judge, and grants Creative's motion.

### BACKGROUND

On January 11, 1993, the Food and Drug Administration ("FDA") informed Creative that its tanning accelerator products were considered drugs within the meaning of 21 U.S.C. § 321(g). Creative initially stopped producing these products, but resumed production after observing that its competitors were marketing very similar products without interference by the FDA. On November 6, 1998, the government filed a Complaint for Forfeiture against the subject articles, and the United States Marshal seized the articles and placed them under the jurisdiction of this Court. On December 3, 1998, Creative filed a Claim to the seized articles.

On February 12, 1999, the government filed an Amended Complaint, alleging that certain products containing the drug L–Tyrosine were non-approved "new drugs," the compositions of which were not generally recognized as safe and effective for use under the conditions suggested by the labeling. The Amended Complaint also alleged that the L–Tyrosine–containing products had not been approved as required by 21 U.S.C. § 355(b), and that the products were misbranded under 21 U.S.C. § 352(f)(1) because their labels did not contain adequate directions for use. Finally, the Amended Complaint alleged that the products were "adulterated" under 21 U.S.C. § 351(a)(2)(B), because they were not manufactured in conformity with good manufacturing practices.

On July 24, 2001, Creative filed the present Motion to Withdraw its Claim and Answer, and seeking entry of a Default Decree of Condemnation and Destruction, by which the products at issue would be destroyed. On August 31, 2001, the government gave notice of its intent to file a motion for summary judgment. The deadline for dispositive motions in this case was September 1, 2001.

### ANALYSIS

The government now objects to the Magistrate Judge's determination that "for all practical purposes, this case is now finished, and the preparation and entry of a decree of condemnation would seem appropriate." The Magistrate Judge found that both parties agree to the condemnation and destruction of the drugs, and that Creative's proposed Decree provides the government with all of the relief requested in its complaint. Specifically, the government makes these objections: (1) the Magistrate Judge was wrong in failing to rule on whether the government is entitled to a judgment with *res judicata* effect; and (2) permitting Creative to withdraw its Claim and Answer will be unfair to the government.

## I. Entitlement to *Res Judicata* Judgment

■ The government's first objection is that permitting Creative to withdraw will deny the government a judgment that has a *res judicata* effect against Creative. In recommending that Creative's motion be granted, the Magistrate Judge stated that he declined to express "an opinion on the merits of the Government's assertion that entry of the proposed Default Decree deprives the government of a judgment with a *res judicata* effect against Creative."

The government cites several cases that discuss the *res judicata* effect of judgments, but it points to no authority holding that the government is entitled to a judgment with such an effect. First, the government cites *United States v. Various Articles of Device*, 814 F.Supp. 31 (E.D.Tenn.1992) and the unpublished, oral opinion in *United States v. An Article of Food... "Schmidt's Blue Ribbon..."*, Civ. No. 72–703–HM (D.Md. Jan. 25, 1974) (reported in Kleinfeld, Kaplan, & Weitzman, *Federal Food, Drug & Cosmetic Act 1969–1974* 166 (1976)). In *Schmidt's Blue Ribbon*, the court simply noted that a judgment in that case would have a *res judicata* effect, but did not hold that the government was entitled to such a judgment. *Schmidt's Blue Ribbon* at 168. That case was decided primarily on an incorrect application of Federal Rule of Civil Procedure 41(a). *Id.* at 167–68. The rule governs dismissal of claims by a plaintiff; the Court has been able to locate no other cases in which Rule 41(a) was held to govern withdrawal of claims by intervening parties in civil forfeiture cases. Therefore, the Court agrees with Creative that the court in *Schmidt's Blue Ribbon* incorrectly applied Rule 41(a), and that the case is not controlling here.

In *Various Articles of Device*, the Court did appear to hold that permitting the claimant to withdraw would deprive the government of a *res judicata* judgment. *Various Articles of Device*, 814 F.Supp. at 32. That case is distinguishable, however, because it had progressed farther than the present case. There, the government's motion for summary judgment had already been argued, and was before the Court for decision. *Id.* at 31. In the present case, the government moved for summary judgment nearly two months after Creative filed its motion to withdraw, and only one week before the hearing on Creative's motion before the Magistrate Judge. The parties have not argued or briefed the issue of summary judgment, as they apparently did in *Various Articles of Device*. Therefore, because this case has not progressed to the same extent, the Court is not persuaded by *Various Articles of Device* that the government has any right to a judgment with *res judicata* effects.

■ The government also cites the United States Supreme Court's decision in *Hipolite Egg Co. v. United States*, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364 (1911), and its progeny, apparently arguing that a party who voluntarily intervenes in a forfeiture proceeding must subject itself to a *res judicata* judgment. These cases do not support the government's argument. The government is correct that where "a party is before the court in an *in rem* proceeding, the court has the power to render an *in personam* judgment against him." *United States v. 184 Barrels Dried Whole Eggs*, 53 F.Supp. 652, 654 (E.D.Wis.1943). This statement, however, merely re-states the holding of *Hipolite Egg* that if a party voluntarily intervenes, he "becomes an actor and subjects himself to costs...." *Hipolite Egg*, 220 U.S. at 59, 31 S.Ct. 364 (emphasis added). This holding recognizes that, as an intervening claimant, Creative is liable for the government's costs of condemnation and destruction. Creative does not dispute this point, and

apparently stands ready to pay such costs. Moreover, the cases that the government cites do not establish any right to a *res judicata* judgment, but simply recognize that *res judicata* existed in those forfeiture proceedings. *United States v. 4 Cans, Etc., Master Liquid,* 127 F.Supp. 243, 246 (N.D.Iowa 1955) and *United States v. 14 105 Pound Bags, Mineral Compound,* 118 F.Supp. 837, 839 (D.Idaho 1953). Creative is correct that none of the cases cited by the government stand for the proposition that a claimant may not withdraw its claim because it voluntarily subjected itself to *in personam* jurisdiction and that therefore, the government is entitled to a *res judicata* judgment.

In fact, there is far more recent authority to show that an intervening party may withdraw its claim, as long as it pays the costs of the condemnation as required by 21 U.S.C. § 334(e). For example, in *United States v. Articles of Drug...Penapar VK,* 458 F.Supp. 687 (D.Md.1978), the court found that because there was "no longer any dispute [between the government and claimant] concerning condemnation and destruction of the drugs," the claimant's motion to withdraw should be granted. *Id.* at 689. The only remaining dispute in that case was over costs, and the court found that § 334(e) required the claimant to pay them. *Id. See also United States v. 302 Cases, of Frozen Shrimp,* 25 F.Supp.2d 1352, 1357 (M.D.Fla.1998) (stating that a claimant may withdraw from a case, but withdrawal does not waive liability for costs); *United States v. 374/100 Pound Burlap Bags,* 1989 WL 36948 (E.D. Pa. April 13, 1989) (holding that an intervening claimant in a civil forfeiture case may withdraw its claim, but is still liable for costs of condemnation).

Thus, the Court finds that although Creative's intervention as a claimant does subject it to an *in personam* judgment of costs, it does not grant the government a right to a *res judicata* judgment. The government's objections in this regard are therefore overruled.

## II. Unfairness

■ The government next objects to the Magistrate Judge's finding that it will not suffer unfairness if Creative withdraws the Claim and Answer. The Court does not agree. For these contentions, the government again relies upon *Various Articles of Device* and *Schmidt's Blue Ribbon.* In both of those cases, the courts held that the cases had proceeded so far that to permit the claimants to withdraw their claims would be unfair to the government, which had devoted significant resources in each case. *Various Articles of Device,* 814 F.Supp. at 32; *Schmidt's Blue Ribbon* at 168. Both of these cases, however, had progressed further than the present one involving Creative. As discussed above, the court in *Various Articles of Device* had already considered arguments on a motion for partial summary judgment, and was prepared to rule when the motion to withdraw was considered. *Various Articles of Device,* 814 F.Supp. at 31. *Schmidt's Blue Ribbon* had progressed even further. In that case, the court had considered and ruled upon a motion for summary judgment six months before it considered the motion to withdraw. *Schmidt's Blue Ribbon* at 166. Even if those two cases properly decided that the government's efforts would have been unfairly wasted, this Court concludes that the present case is at a relatively early stage, and has not progressed far enough to warrant a finding that withdrawal will lead to unfairness. Therefore, the government's objection in this regard is overruled.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court

**OVERRULES** plaintiff's objections [Docket No. 78] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 77]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Claimant's Motion to Withdraw Its Claim and Answer [Docket No. 70] is **GRANTED**.

2. Claimant's proposed Default Decree of Condemnation and Destruction shall issue.

3. The costs and proper expenses are to be awarded to the United States and against Claimant Creative when the decree of condemnation is entered.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

## REPORT AND RECOMMENDATION

NOEL, Chief United States Magistrate Judge.

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 7, 2001, on Claimant Creative Labs' ("Creative's") Motion to Withdraw its Claim and Answer, Instanter [# 70]. This action is an *in rem* forfeiture proceeding brought pursuant to 21 U.S.C. § 334. The products at issue in this action include tanning accelerators, sun screen products, and the raw materials for making the same. Creative seeks leave to withdraw its claims to the articles of drugs which are currently held under seizure consistent with federal regulations. For the reasons which follow, this Court will recommend that Creative's motion be granted.

## I. BACKGROUND

On January 11, 1993, the Food and Drug Administration ("FDA") informed Creative that the tanning products marketed by Creative as tanning accelerators were considered drugs within the meaning of 21 U.S.C. § 321(g). Creative alleges that this action was taken pursuant to a June 24, 1992, Drug Study Bulletin from the FDA indicating that the FDA was initiating a "class action" against tanning accelerators. While Creative initially stopped production of its tanning acceleration products, it resumed production after observing that its competitors were continuing to market very similar tanning accelerators without hindrance from the FDA.

On November 6, 1998, the United States filed a Complaint for Forfeiture against the subject articles. Subsequent to that date, the United States Marshall for the District of Minnesota placed the subject articles under seizure within the jurisdiction of this Court. On December 3, 1998, Creative filed its Claim to the seized articles.

In the subsequent months and years, both parties actively litigated this case. For example, an Amended Complaint was filed on February 12, 1999, alleging that certain products labeled as containing L-tyrosine and bearing statements such as "actifier," "booster," "accelerator," and "accelerates," were unapproved "new drugs" whose composition was not generally recognized as safe and effective for use under the conditions suggested in the labeling, and thus may not be introduced into interstate commerce. *See* 21 U.S.C. §§ 321(p), 355(a). The Amended Complaint also alleged that no approvals of applications were in effect for the L-Tyrosine drugs as required by 21 U.S.C. § 355(b). Furthermore, the Amended Complaint alleged that the L-Tyrosine products were misbranded within the meaning of 21 U.S.C. § 352(f)(1) because their labeling did not contain adequate directions for use. Lastly, the Amended Complaint alleged that the products were adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B) because the methods, facilities and controls used for manu-

facturing, processing, packing and holding the products were not operated in conformity with current good manufacturing practice to ensure that products met the requirements of the Act.

On June 15, 1999, Creative filed an Answer, Affirmative Defense, and Counterclaim to the Amended Complaint, denying the allegations contained therein. On August 13, 1999, the Government filed a Motion to: (1) Strike the Answer and Counterclaim; (2) Enter Default Judgment against Claimant; or in the alternative; (3) Dismiss the Counterclaim. On May 24, 2000, the Honorable John R. Tunheim ("Judge Tunheim"): (1) denied the Government's Motion to Strike the Answer and Counterclaim; (2) denied the Government's Motion to Enter Default Judgment; and (2) granted in part and denied in part the Government's Motion to Dismiss the Counterclaim. *See* Docket No. 54.

Creative filed a Motion for an Order Permitting It to Bring Certain Articles Into Compliance and Destroying Certain Articles [# 60] on October 24, 2000. On November 16, 2000, Judge Tunheim referred the matter to this Court. Following a hearing on the matter, this Court denied Creative's Motion for an Order Permitting It to Bring Certain Articles Into Compliance and Destroying Certain Articles [# 60] on February 16, 2001. On July 24, 2001, Creative filed its current Motion to Withdraw its Claim and Answer, Instanter.

## II. ANALYSIS

### A. Claimant Creative Labs' Motion to Withdraw its Claim and Answer, Instanter [# 70] should be GRANTED.

Creative's withdrawal of its Claim and Answer is intended to conclude this seizure action through a Default Decree of Condemnation and Destruction ("Decree"). The parties dispute whether Creative can withdraw its claim of interest and answer.

Although the proposed Default Decree provides the Government with all the relief sought in the complaint, it opposes the motion on the grounds that it would: (1) unfairly allow Creative to withdraw its appearance, thereby negating the *in personam* jurisdiction voluntarily conferred upon this Court; and (2) deprive the Government of the benefits of a *res judicata* judgment in this case. Specifically, the Government contends that since Creative subjected itself *in personam* to the jurisdiction of this Court, any judgment concerning the seized goods will have a *res judicata* effect against Creative in any subsequent action brought by the Government involving the same issues. Therefore, allowing Creative to withdraw its Claim will unfairly avoid a judgment with a *res judicata* effect, as well as the costs normally awarded against the person intervening as the claimant. Furthermore, due to Creative's intervention in the case, the Government has expended substantial resources in litigating this dispute and would be prejudiced should Creative be allowed to withdraw its Claim. The Government would have this Court deny Creative's motion and require it to respond to the pending summary judgment motion on the merits.

Creative argues that the Government's concern that the Default Decree lacks a *res judicata* effect is unwarranted because the Decree provides the Government with the exact relief requested in its Amended Complaint. Furthermore, the Government has failed to establish that it has an independent right to a *res judicata* effect merely because the Claimant filed a claim to the seized goods and Creative has not attempted to avoid the costs associated with the condemnation and destruction of the seized articles.

As noted earlier, the Government would have this Court deny Creative's motion

and require it to respond to the pending summary judgment motion on the merits so as to obtain a judgment with a *res judicata* effect against Creative. Without expressing any opinion on the merits of the Government's assertion that entry of the proposed Default Decree deprives the Government of a judgment with a *res judicata* effect against Creative, this Court concludes that Creative's motion should be granted.

In the instant case, Creative's current motion was fully briefed and filed on July 24, 2001. On July 30, 2001, Judge Tunheim referred the matter to this Court. It was not until August 31, 2001, one full month after Creative's current motion and only one day before the dispositive motion deadline of September 1, 2001, that the Government noticed its intent to file a summary judgment motion. Under these circumstances, the Court concludes there is no unfairness to the Government in granting the Claimant's motion to withdraw its claim.

Both parties agree to the condemnation and destruction of the drugs. For all practical purposes, this case is now finished, and the preparation and entry of a decree of condemnation would seem appropriate. Creative's proposed Default Decree provides the Government with all of the relief it requested in its complaint and assumes costs and expenses associated with this action. Accordingly, this Court will recommend that Creative's motion to withdraw be granted.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Claimant Creative Labs' Motion to Withdraw its Claim and Answer, Instanter [# 70] be **GRANTED** and the proposed Default Decree of Condemnation and Destruction be entered.

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.

November 28, 2001.