**PUBLIC CITIZEN, Claudia Silverman and Sidney M. Wolfe, Appellants,**

v.

**Carol Tucker FOREMAN, Assistant Secretary, Department of Agriculture et al.**

No. 79–1690.

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1980.

Decided July 31, 1980.

William B. Schultz, Washington, D. C., with whom Alan B. Morrison, Washington, D. C., was on the brief, for appellants.

Bruce E. Fein, Atty., U. S. Dept. of Justice, Washington, D. C., with whom Barry Grossman, Atty., U. S. Dept. of Justice, Raymond W. Fullerton, Director, Litigation Div., U. S. Dept. of Agriculture, Washington, D. C., and Richard M. Cooper, Chief Counsel, Food and Drug Administration, Rockville, Md., were on the brief, for appellees Foreman et al.

Hershel Shanks and James Bruce Davis, Washington, D. C., were on the brief for appellee National Independent Meat Packers Association.

Alan H. Kaplan, Richard S. Morey and Glenn E. Davis, Washington, D. C., entered appearances for intervenor American Meat Institute.

Before TAMM, ROBB and MIKVA, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In this action Public Citizen, a nonprofit public interest group, and two of its members, seek to bring the nitrites used in bacon within the regulatory ambit of the Food and Drug Administration (FDA). They want a declaratory judgment that nitrites are an "unsafe" food additive within the meaning of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–392 (1976). Such a declaration would require the FDA to ban the use of nitrites in bacon and other cured meats. United States District Judge Gerhard Gesell denied relief, finding that a prior sanction for the use of nitrites by the United States Department of Agriculture (USDA) exempts nitrites from the provisions of the Food, Drug, and Cosmetic Act. We agree and affirm.

## I. STATUTORY BACKGROUND

Both the United States Department of Agriculture and the Food and Drug Administration are charged with ensuring the purity of our food. The USDA enforces the Federal Meat Inspection Act, as amended,

21 U.S.C. §§ 601–624 (1976),[1] which prohibits the production or sale of "adulterated" meat. *Id.* § 610(c). Meat is "adulterated" "if it bears or contains any poisonous or deleterious substance which may render it injurious to health." *Id.* § 601(m)(1).

The Food and Drug Administration[2] has a different mandate: it regulates food additives. At the beginning of this century, Congress passed the Food and Drugs Act of 1906, ch. 3915, 34 Stat. 768, to regulate poisonous substances added to food. *See* H.R.Rep. No. 1338, 92d Cong., 2d Sess. 4 (1972). It amended this legislative grant in 1938 to give the FDA authority over all food additives. *See* Federal Food, Drug, and Cosmetic Act of 1938, ch. 675, 52 Stat. 1040. Under the amended statute, the FDA regulates

> any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food (including any substance intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food . . .) . . . .

21 U.S.C. § 321(s) (1976). Like the USDA, the FDA also enforces a prohibition on the production or sale of any "adulterated"

food, which is any food containing an "unsafe" food additive as defined in 21 U.S.C. § 348(a). *See id.* § 342(a)(2)(C).[3] Until 1958, the burden of proving that a food additive was "unsafe" fell on the government.[4] The Food Additives Amendment of 1958, Pub.L. No. 85–929, 72 Stat. 1784, shifted this burden by creating a presumption that a food additive is "unsafe" until proven otherwise, unless the additive had been exempted from this rule by statute or regulation. 21 U.S.C. § 348(a) (1976).

■ Under one such statutory exception, the provisions of this regulatory scheme do not apply to "any substance used in accordance with a sanction or approval granted prior to September 6, 1958, pursuant to this chapter . . . or the Meat Inspection Act [21 U.S.C. §§ 601–624 (1976)]." *Id.* § 321(s)(4). This "grandfather" exemption, called the "prior sanction" provision, relieves the Food and Drug Administration of responsibility for examining food additives already recognized as safe by the federal government.[5]

## II. FACTUAL BACKGROUND

Nitrites are common chemicals that have been used to cure meats for centuries.[6] The nitrites perform two functions. First, they

---

1. The Wholesome Meat Act of 1967, Pub.L. No. 90–201, 81 Stat. 584, recodified the various provisions of the Meat Inspection Act, ch. 2907, 34 Stat. 1256 (1907) (formerly codified at 21 U.S.C. §§ 71–91 (1964)) (currently codified at 21 U.S.C. §§ 601–624 (1976)). *See* S.Rep. No. 799, 90th Cong., 1st Sess. 4–5 (1967), U.S. Code Cong. & Admin. News 1967, pp. 2188, 2191.

2. The Food and Drug Administration was originally a division of the Department of Agriculture. In 1940, President Roosevelt transferred it to the Federal Security Agency. *See* Reorg. Plan No. IV of 1940, § 12, 5 Fed.Reg. 2421, 2422 (1940), *reprinted in* 5 U.S.C. app., at 718, 720 (1976) *and in* 54 Stat. 1234, 1237 (1940). The FDA moved to the Department of Health, Education, and Welfare when President Eisenhower *created that department* in 1953. *See* Reorg. Plan No. 1 of 1953, § 5, 18 Fed.Reg. 2053, 2053 (1953), *reprinted in* 5 U.S.C. app., at 762, 762 (1976) *and in* 67 Stat. 631, 632 (1953).

3. *Section 342(a)(2)(C) states:* "A food shall be deemed to be adulterated— . . . if it is, or if it bears or contains, any food additive which

is unsafe within the meaning of [21 U.S.C. § 348] . . . ." 21 U.S.C. § 342(a)(2)(C) (1976).

4. *See* S.Rep. No. 2422, 85th Cong., 2d Sess. 1 (1958); H.R.Rep. No. 2284, 85th Cong., 2d Sess. 1 (1958), U.S. Code Cong. & Admin. News 1958, p. 5300.

5. Even if an additive is exempt from the provisions of the Food Additives Amendment, any meat to which it is added must still comply with the more general provisions of the Meat Inspection Act, 21 U.S.C. §§ 601–624 (1976).

6. Nitrites are chemical compounds produced by the bacterial action on organisms containing nitrogen. Nitrates are related chemical substances that are common in fertilizers. Bacterial action converts nitrates into nitrites. Except as specifically noted, the term nitrites will be used in this opinion to refer to potassium nitrite, potassium nitrate, sodium nitrite, and sodium nitrate.

protect the color and flavor of the cured meat. Without this color fixation, the cured meat would turn a dull grey when cooked. Second, the nitrites inhibit the growth of *Clostridium botulinum* spores and thus protect against botulism contamination.

Historically, concern over the safety of nitrites usually centered on its toxicity. Nitrites, unlike nitrates, a related chemical compound, are toxic, and consumption of a substantial amount of the compound can be fatal. This concern with the safe use of nitrites led the Department of Agriculture to impose a maximum level of 200 parts per million (ppm) of nitrites in cured meat in 1925. *See* Kerr, Marsh, Schroeder & Boyer, *The Use of Sodium Nitrite in the Curing of Meat, reprinted in Regulation of Food Additives and Medicated Animal Feeds: Hearings Before a Subcomm. of the House Comm. on Government Operations*, 92d Cong., 1st Sess. 195–202 (1971).

During the past decade, however, the focus has shifted to nitrites' possible carcinogenic effects on humans. Test results indicate that nitrites in meat combine with secondary and tertiary amines and amides during cooking to form nitrosamines. These substances have caused cancer in laboratory animals, and researchers believe they might have the same effect on humans.

This use of nitrites in bacon causes special concern about nitrosamines. The temperature at which bacon is fried makes it especially susceptible to the formation of nitrosamines. N-nitrosopyrrolidine is the nitrosamine most commonly found in bacon after frying. 43 Fed.Reg. 20992 (1978), *reprinted in* Joint Appendix (J.A.) at 196.

These questions about nitrites and nitrosamines prompted the USDA to form an Expert Panel on Nitrites, Nitrates, and Nitrosamines to examine the use of nitrites in cured meat products. *See id.* While the Panel was conducting its investigation, the USDA issued a proposed rule on the use of nitrites in bacon. 40 Fed.Reg. 52614 (1975).[7] As proposed, the rule would prohibit the use of nitrates in bacon[8] and limit the level of nitrites to 125 ppm, with the use of ascorbate or erythorbate being required to block the formation of any nitrosamines. The agency continued to recognize the need for nitrites in bacon to prevent the growth of botulism spores and noted: "To date, no substitute for nitrite has been discovered. No compound or treatment has been found that will produce the characteristic product and that possesses nitrite's antibotulinal properties." *Id.* at 52615. The Department asked for public comment on the rule.

After a three year study, the Expert Panel reached a conclusion similar to the proposed rule: 120 ppm of sodium nitrite should be permitted in bacon in conjunction with 550 ppm of sodium ascorbate or sodium erythorbate to block nitrosamine formation. Such a combination, the Panel believed, would minimize the risk of botulism while posing little danger of nitrosamine formation.

The final rule adopted by the USDA followed the Expert Panel's recommendations on the use of nitrites and ascorbate or erythorbate in bacon. *See* 9 C.F.R. § 318.7(b) (1980).[9] The Department believed adoption of the rule would

result in the elimination of nitrosamines at confirmable levels, the reduction in the lowest level at which nitrosamines may be confirmed by laboratory testing, and to the reduction of nitrite to the lowest amount possible while still maintaining

---

7. The Secretary of Agriculture has authority, under 21 U.S.C. § 621 (1976), to issue rules and regulations implementing the provisions of the Meat Inspection Act.

8. The Department proposed this ban on nitrates because they convert to nitrites before having any fixative or preservative effect. *See* note 6 *supra*.

9. The Department has since amended its regulations to permit the sale of nitrite-free bacon if it is so noted on the package. *See* 44 Fed.Reg. 48961 (1979) (codified at 9 C.F.R. § 319.2 (1980)).

the bacon characteristics which are known to satisfy the consumer.

43 Fed.Reg. 20994 (1978), *reprinted in* J.A. at 198.

## III. THIS LITIGATION

Plaintiffs participated in the USDA rulemaking. The agency rejected their argument that the new rule could not be promulgated without prior FDA clearance.[10] Having thus failed at the administrative level, they filed suit in the United States District Court for the District of Columbia seeking a declaratory judgment that the sodium nitrite used in bacon is an "unsafe" food additive under sections 348(a) and 610(c) of title 21, 21 U.S.C. §§ 348(a), 610(c), thus making bacon containing this compound "adulterated" under sections 342(a)(2)(C) and 601(m)(1),[11] *id.* §§ 342(a)(2)(C), 601(m)(1). The requested declaration would have invalidated the USDA regulation authorizing the use of nitrites in bacon, *see* 9 C.F.R. § 318.7(b) (1980), and would have required a ban on the sale of cured products containing nitrites until such time as the FDA declares the use of nitrites "safe" under section 348(a)(2), 21 U.S.C. § 348(a)(2).

Plaintiffs acknowledged that the USDA long had permitted the use of nitrites in curing meat. They contended, however, that any prior sanction existed only for nitrites' color fixing qualities. They argued that the present regulation permitting use of nitrites as a preservative is a change in purpose that nullifies this prior sanction. In response, the Government asserted that the prior sanction under section 321(s)(4) of title 21, 21 U.S.C. § 321(s)(4) (1976), existed both for nitrites' color fixing and their preservative qualities.

■ On cross motions for summary judgment, United States District Judge Gesell ruled for the Government.[12] He agreed with the joint determination of the USDA and the FDA that nitrites qualified for a prior sanction as a preservative. *Public Citizen v. Foreman*, 471 F.Supp. 586, 591–92 (D.D.C.1979). *See* Letter from Carol Tucker Foreman, Asst. Sec'y for Food and Consumer Services, USDA, to Sherwin Gardner, Deputy Comm'r of FDA, at 3 (Jan. 24, 1978) [hereinafter cited as USDA Letter], *reprinted in* Joint Appendix (J.A.) at 25, 27. In so doing, he rejected plaintiffs' argument concerning the absence of specific language in the USDA regulations regarding nitrites' preservative effects:

---

10. The Department of Agriculture specifically rejected plaintiffs' argument in its discussion of the final rule:

[A] commenter stated . . . that USDA cannot legally authorize a new food additive use, such as using nitrite to combat botulism, which did not clear FDA under the FDC Act. The Department has determined that nitrates and nitrites are not food additives subject to [21 U.S.C. § 348(c)(3)(A) (1976)] when used in meat products because they were permitted as preservatives and for other purposes in meat products in general prior to the enactment of the food additive provisions under the Food, Drug, and Cosmetic Act, and thus are specifically exempted from such food additive status.

43 Fed.Reg. 20994 (1978), *reprinted in* Joint Appendix (J.A.) at 198.

11. Being "adulterated," bacon containing nitrites could not be introduced into commerce. *See* 21 U.S.C. § 331(a) (1976).

12. On the prompting of the district court, *see Public Citizen v. Foreman*, 471 F.Supp. 586, 589–90 (D.D.C.1979), appellees contend that

appellants lack standing to challenge the USDA regulation. We disagree. Plaintiffs allege that the nitrite-free bacon they seek is not readily available at a reasonable price. Although this injury may not be overly burdensome (they could abstain from eating bacon entirely or seek out the nitrite-free bacon that may be available), *see also* 44 Fed.Reg. 48959 (1979), it is an injury nonetheless. *See United States v. SCRAP*, 412 U.S. 669, 683–90, 93 S.Ct. 2405, 2413–17, 37 L.Ed.2d 254 (1973). Moreover, there is a substantial likelihood that a favorable result in this litigation, *i. e.*, a declaration that nitrites are a food additive subject to FDA clearance, would redress this injury, for such a declaration would mean an immediate temporary ban on nitrites in bacon and a permanent ban unless the FDA affirmatively finds the use of nitrites acceptable, nitrites being presumed unsafe until proven otherwise. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 75 n.20, 98 S.Ct. 2620, 2631, n. 20, 57 L.Ed.2d 595 (1978). *See generally National Black Police Ass'n v. Velde*, 631 F.2d 784 at 788 (D.C.Cir.1980) (Tamm, J., concurring in part and dissenting in part).

[T]he preservative benefits flowing from the use of nitrite in meat were so evident prior to 1958 that the USDA saw no reason to state those benefits in the corpus of its regulations. The Court further accepts the agencies' conclusion that the preservative qualities of nitrite were common knowledge before 1958.

*Public Citizen v. Foreman*, 471 F.Supp. at 592. Having concluded that nitrites were not a "food additive" under the statute, Judge Gesell upheld the USDA regulation.[13]

## IV. LEGAL ISSUES

On appeal, appellants renew their argument that nitrites do not qualify for a prior sanction exemption as a preservative. They argue that the USDA sanctioned nitrites' use as a preservative does not come within this prior sanction. Alternatively, Public Citizen suggests that the change in the purpose for nitrites' use in the 1978 regulations justify the withdrawal of any prior sanction granted as a preservative. We reject these contentions.

**13.** Plaintiffs also sought relief under the color additive provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 321(t), 376 (1976). Plaintiffs had not raised these arguments before the USDA or the FDA, however, so the court dismissed these claims, invoking the doctrine of primary jurisdiction. *Public Citizen v. Foreman*, 471 F.Supp. at 594.

Plaintiffs thereafter petitioned the FDA to declare that nitrites are a color additive. The agency denied the petition but began a rulemaking proceeding on nitrites' effect on bacon. *See* 44 Fed.Reg. 75659 (1979). In a subsequent suit over the FDA's denial of this petition, the district court granted the Government's motion to dismiss, citing plaintiffs' failure to exhaust its administrative remedies. *See Public Citizen v. Goyan*, 496 F.Supp. 364 (D.D.C.1980).

**14.** The FDA has made clear its agreement with the position of the USDA. At a congressional hearing on the use of nitrites in foods, Dr. Charles C. Edwards, Commissioner of the Food and Drug Administration, stated that nitrites had a prior sanction as both a preservative and a color fixer:

The use of nitrites and nitrates has a long history of use in curing meat. The manner in which they came into use is lost in antiquity. The use of nitrites and nitrates in meat products was subject to prior sanction as a preservative and color fixative under the Meat Inspection Act that existed in 1958, and thus was exempt from food additive control.

We believe that the USDA regulations did sanction the use of nitrites as a preservative prior to 1958. At the outset of our analysis, we note that courts appropriately accord substantial deference to agencies' interpretations of the regulations they must administer, *United States v. Rutherford*, 442 U.S. 544, 553–54, 99 S.Ct. 2470, 2475–76, 61 L.Ed.2d 68 (1979), and that such deference is especially prudent in areas involving scientific and medical controversies, *see Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1026–27 (D.C.Cir.1978); *NORML v. Bell*, 488 F.Supp. 123, 137 (D.D.C.1980) (three-judge district court). In the present case, the USDA and the FDA have stated that the USDA's pre-1958 approval of nitrites did indeed permit their use as a preservative: "For the past 36 years the regulations have continuously indicated that nitrates and nitrites have been permitted for use in cured products as a preservative." USDA Letter at 3, *reprinted in* J.A. at 27.[14] Thus, the two agencies are in agreement on

*Regulation of Food Additives and Medicated Animal Feeds: Hearings Before a Subcomm. of the House Comm. on Government Operations*, 92d Cong., 1st Sess. 168 (1971).

Testifying at the same series of hearings, officials of the USDA agreed that nitrites were sanctioned as preservatives, although they noted that this property was secondary to its color-fixing role in meat. In response to a question about nitrites' prior sanction as a preservative, the following discussion occurred:

Dr. Murphy: The use of nitrites and nitrates in meats traditionally has been for the color fixing properties, and imparting the cured characteristics to the product. The preservative effect, which we have always known about, has always been incidental to the curing of the meat.

Now, the prior sanction—and we have continued to carry it as a curing entry in our regulations. Does that answer your question?

Mr. Fountain: That is a response. I am not sure it answers it.

Dr. Yeutter: I think the answer in simplified terminology may be, Mr. Chairman, that the meat and poultry inspection program always considered nitrite to be primarily a color fixative, but it is likewise an important preservative element.

*Id.* at 264.

**976**

the question now before us, and that agreement in itself is highly significant.[15]

Furthermore, the record fully supports the agencies' view that, well before 1958, nitrites were known to have preservative qualities and were approved for use as such. First, the use of the term "cure" to describe the process in which nitrites were used [16] suggests a preservative purpose. See Webster's Third New International Dictionary 555 (1971) (unabridged) ("cure" means "to subject to a preservative process ([cure] meat by salting)"). See also 2 Oxford English Dictionary 1263 (1933) ("cured" means "[p]reserved by salting, drying, etc."). Second, USDA regulations governing additives to meat commonly have listed nitrites with other common preservatives such as salt, sugar, vinegar, and spices. See, e. g., U. S. Department of Agriculture, Regulations Governing the Meat Inspection of the United States Department of Agriculture, § 6, ¶ 2, at 50 (1914), reprinted in J.A. at 75, 76; United States Department of Agriculture, Regulations Governing the Meat Inspection of the United States Department of Agriculture, § 18.7(b), at 89 (1947), reprinted in J.A. at 101, 108. Third, USDA regulations, which have distinguished between "fresh" and "preserved" meats for

decades, have stated that "[t]he word 'fresh' shall not be used on labels to designate product which contains any sodium nitrate, sodium nitrite, potassium nitrate, or potassium nitrite, or which has been salted for preservation." 14 Fed.Reg. 4590 (1949), reprinted in J.A. at 49 (codified at 9 C.F.R. § 317.8(c)(1) (1949)) (presently codified at 9 C.F.R. § 317.8(b)(6) (1980)). Finally, USDA regulations for meat products intended for export specifically have listed nitrites as a preservative:

> Preservatives other than common salt, sugar, saltpeter [potassium nitrate], wood smoke, vinegar, acetic acid, spices, alcohol, refined sodium nitrate and refined sodium nitrite (not to exceed 200 parts per million in the finished product), or coloring matter, shall not be used in or upon meat, meat by-products, or any preparation of either of them.

10 Fed.Reg. 3346 (1945), reprinted in J.A. at 56.[17] The tenor and scheme of this regulatory language demonstrate that the USDA approved nitrites for use as a preservative prior to 1958; they therefore qualify on that ground for the prior sanction exemption to the Federal Food, Drug, and Cosmetic Act.[18]

**15.** Admittedly, the Government adopted a different position in Schuck v. Butz, 500 F.2d 810 (D.C.Cir.1974), arguing that the Secretary of Agriculture could not authorize the use of nitrites as a food additive to prevent botulism without first obtaining the approval of the FDA. Brief for Appellee Secretary of Agriculture at 22, Schuck v. Butz, reprinted in J.A. 150, 159. This prior position, while it reduces the deference owed the agencies' present position, does not estop the Government from its present argument. The agencies, having reviewed the history of nitrite regulation, now agree that it was approved for use as a preservative. Such a change in position lacks ideal consistency but is certainly permissible where the agencies give reasons for the change and when no egregious injustice results. See L'Enfant Plaza Properties, Inc. v. District of Columbia Redevelopment Land Agency, 564 F.2d 515, 524 (D.C.Cir.1977).

**16.** See, e. g., Department of Agriculture, Notice Regarding Meat Inspection (1927), reprinted in J.A. at 96.

**17.** The Department rescinded this regulation in 1959 because the differing foreign laws con-

cerning the importation of meat made a strict rule impractical. See 24 Fed.Reg. 4024–25 (1959), reprinted in J.A. at 59–60.

**18.** The scientific textbooks of the era also support this finding. A book written in 1943 by USDA personnel stated: "The use of chemical preservatives in the preparation and preservation of meat and meat-food products with the exception of common salt, nitrate of soda [sodium nitrate], nitrite of soda [sodium nitrite], and saltpeter [potassium nitrate] is prohibited in the United States, and the measures governing the same are contained in B.A.I. [Bureau of Animal Industry] Regulations." R. Edelmann, Text-Book of Meat Hygiene 101 (8th rev. ed. J. Mohler & A. Eichhorn 1943), reprinted in J.A. at 61, 64. A doctor in 1951 noted that ".02 per cent of sodium nitrite, which is the amount of nitrite permitted to be used in the curing of meats, markedly inhibits and in certain instances entirely prevents the growth of species of [certain bacteria] . . . ." A. Miller, Meat Hygiene 295–96 (1951), reprinted in J.A. at 66, 70–71.

■ Appellants further contend that the change in regulatory purpose of the 1978 regulation invalidates any prior sanction that nitrites might have as a preservative. Under the old provision, a maximum level of 200 ppm nitrite could be used to fix color and preserve the meat, but now 120 ppm must be used to prevent botulism. Appellants assert that this change in purpose takes nitrites outside the limited exemption created under the narrow prior sanction provision. We disagree.

The prior sanction provision exempts from the terms of the Federal Food, Drug, and Cosmetic Act "any substance *used* in accordance with a sanction or approval granted prior to September 6, 1958." 21 U.S.C. § 321(s)(4) (1976) (emphasis added). With nitrites, the thrust of the regulation certainly has changed. Their color-fixing properties are no longer of preeminent interest; the focus now centers on their preservative qualities. Their "use" as a preservative, however, for which they have had USDA approval, remains the same today as in decades past. Research has revealed that botulism is a danger in bacon, and, in their preservative role, nitrites destroy botulism spores. We agree with Judge Gesell, who stated:

> [A]n arguably defensible interpretation of the prior-sanction clause would be that it was meant solely to lose its applicability when an otherwise covered regulatory scheme turns away from the purpose of protecting safety and health. Otherwise, the clause might become a subtle deterrent to the consideration by USDA of new scientific developments in the health and safety area. Certainly, taking a new risk to health—namely, botulism—into account cannot be deemed a move away from the increased protection of safety and health.

*Public Citizen v. Foreman*, 471 F.Supp. at 591 n.6.

■ Regulations promulgated under this prior exemption provision state that "[a]

prior sanction shall exist only for a specific use(s) of a substance in food, i. e., the level(s), condition(s), product(s), etc., for which there was explicit approval by the [FDA] or [USDA] prior to September 6, 1958." 21 C.F.R. § 181.5 (1979). Appellants also argue that, under this regulation, the change in the level of nitrites allowed by the 1978 rule cancels its prior sanction. We believe, however, that the cited regulation has a narrow scope: it prohibits the invocation of the prior sanction to justify *greater* levels of use, conditions of use, or numbers of products for which the substance may be used. Such changes could endanger the public and thus come outside the terms of the substance's prior sanction. In this instance, the new regulation decreased the quantity of nitrites to be used in bacon from 200 to 120 ppm; it therefore does not run afoul of the statute or regulation.[19]

## V. CONCLUSION

The use of nitrites in curing bacon presents difficult medical and scientific questions. Some believe the use of nitrites causes cancer while others claim nitrites are needed to prevent botulism. Such questions go beyond our competence, and we must defer to the administrative agencies with their technical expertise on these matters. We find that the USDA in its regulation of nitrites has acted lawfully. Given the serious medical questions involved, we must hope they have acted wisely as well.

*Affirmed.*

---

**19.** *See also* 21 C.F.R. § 181.5(c) (authorizing the FDA and USDA to amend their regulations "to impose whatever limitation(s) or condi-

tion(s) may be necessary for the safe use of the ingredient").