KAREN LECRAFT HENDERSON, Circuit Judge,
concurring in the judgment:
Although I agree with my colleagues that the individual and organizational plaintiffs do not have standing, I so conclude for a different reason. Regarding the two individual plaintiffs, I believe we need not assess whether they face a “sub *922 stantially increased risk of harm and ... substantial probability of harm” from consuming NPIS-inspected poultry (NPIS poultry), see Public Citizen v. Nat'l Highway Traffic Safety Admin., 489 F.3d 1279, 1295 (D.C.Cir.2007) (emphases in original), because, as their declarations make clear, they have the alternative of consuming non-NPIS poultry — e.g., by purchasing poultry from a farmers’ market — and they have failed to allege that the alternative is “not readily available at a reasonable price.” See Coal. for Mercury-Free Drugs v. Sebelius, 671 F.3d 1275, 1281 (D.C.Cir.2012) (emphasis in original). For this reason, any injury they suffer from consuming NPIS poultry is a self-inflicted injury that would not establish Article III standing. Regarding plaintiff Food & Water Watch (FWW), I would reject its organizational standing argument because its only expenditures are made for “pure issue-advocacy,” an insufficient injury to support standing under our precedent. See Ctr. for Law & Educ. v. Dep’t of Educ., 396 F.3d 1152, 1162 (D.C.Cir.2005).
The individual plaintiffs allege that they cannot determine whether the poultry they buy at grocery stores is NPIS-in-spected and, at the same time, that NPIS poultry accounts for 99.9% of available poultry. See Compl. ¶ 34. If the plaintiffs were in fact limited to purchasing poultry at grocery stores, I too would most likely conduct the “substantial increase and substantial probability” inquiry my colleagues undertake. See Maj. Op. 915-17. But that is not the case. Under our precedent, if a plaintiff has access to an alternative of the product he claims causes his injury, he must show that the alternative is either (1) “not readily available” or (2) not “reasonably] price[d]” to establish standing. Public Citizen v. Foreman, 631 F.2d 969, 974 n. 12 (D.C.Cir.1980). And because the plaintiffs assert only that they “seek out chicken from [both] local farmers’ market[s] [and] grocerfs],” Foran Decl. ¶ 3, J.A. 47 (emphasis added), they have failed to do so.[1] To rule out access to an alternative under the first prong, the alternative must be “difficult to obtain.” See Coal. for Mercury-Free Drugs, 671 F.3d at 1281 (emphasis omitted). It is not enough, for example, to allege that some, or even many, suppliers do not provide it. See id. at 1282. Under the second prong, the plaintiffs must allege more than “the mere existence of a price differential,” id.; instead, they must claim that the product is not reasonably priced. See id. at 1282-83. Notwithstanding neither assertion is “overly burdensome,” Foreman, 631 F.2d at 974 n. 12; see Coal. for Mercury-Free Drugs, 671 F.3d at 1281, 1283 (price differential must have more than “little effect” on alternative’s “affordability for the average person”), the plaintiffs’ failure to affirmatively allege unavailability or unreasonable cost should end our inquiry. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (“[t]he party invoking federal jurisdiction bears the burden of establishing” standing).
Granted, the two individual plaintiffs’ declarations are vague about the cost and accessibility of farmers’ markets but they are plainly insufficient to sustain their standing in my view. See Foran Decl. ¶ 6, J.A. 48 (plaintiff unable to find farmers’ market near family residences); see also Sowerwine Decl, supra n. 1; cf. FWW *923 member Pittman Deel. ¶ 10, J.A. 64 (“turkey is not always available year — round” [sic] at preferred farmers’ market). But the plaintiffs allege no facts supporting the notion that poultry from farmers’ markets is either unavailable or unreasonably priced.[2] At best, their allegations are agnostic about the proximity, inventory and pricing of nearby markets, which is, to me, insufficient to conclude that non-NPIS poultry is either “difficult to obtain” or that the price differential is sufficient to affect “affordability for the average person.” Coal, for Mercury-Free Drugs, 671 F.3d at 1281,1283 (emphasis omitted).
The individual plaintiffs have two options. They can either purchase/consume the source of their alleged injury (ie., NPIS poultry) or they can avoid it. Avoidance then presents two possibilities. They can stay away from poultry altogether or they can purchase/consume non-NPIS poultry. In Clapper v. Amnesty Int’l USA, — U.S. -, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013), the Supreme Court concluded that the respondents’ alleged injury — likelihood that their telephone and email communications would be intercepted by domestic surveillance — was, for many reasons, too speculative to support standing, id. at 1147-50. It then rejected the respondents’ argument that the costs they incurred to avoid surveillance were themselves a cognizable injury, concluding that “allowing respondents to bring this action based on costs they incurred in response to a speculative threat would be tantamount to accepting a repackaged version of respondents’ first failed theory of standing.” Id. at 1151. Clapper subsequently dubbed the respondents’ “avoidance” injury “self-inflicted.” Id. at 1152. I take from this holding that injury attendant on the avoidance of an uncognizable injury is itself insufficient for standing because, for one thing, it is self-imposed. Here, the individual plaintiffs’ professed injury from eschewing poultry altogether is similarly self-imposed — and therefore insufficient for standing — because they are free to purchase/consume poultry that is neither “difficult to obtain” nor “unreasonably priced.” Coal. for Mercury-Free Drugs, 671 F.3d at 1281, 1283 (emphasis omitted).[3]
I believe this case is on all fours with Coalition for Mercury-Free Drugs. There, the plaintiffs challenged the Food and Drug Administration’s (FDA) approval of the use of thimerosal, a mercury-based preservative, in certain vaccines. Coal. for Mercury-Free Drugs, 671 F.3d at 1276-77. The plaintiffs alleged a “fear of future *924 exposure to mercury,” claiming that it could cause “miscarriages, autism, and other developmental disorders.” Id. at 1278, 1280 (emphasis in original). But the plaintiffs did not allege that thimerosalfree vaccines were not readily available at a reasonable price. Id. at 1282. “On the contrary,” we recognized, “they sa[id] that they w[ould] refuse thimerosal-preserved vaccines.” Id. at 1280. Given the existence of a readily available and reasonably priced thimerosal-free alternative — the plaintiffs’ “declarations [having] claim[ed] only that there was some price differential at a few individual outlets,” id. at 1283 (emphasis added) — any injury from exposure to thimerosal-based vaccines would be self-inflicted. And, accordingly, we concluded that the plaintiffs lacked standing. See id.[4]
Regarding plaintiff FWW, our organizational standing jurisprudence applies a two-part test to determine whether an organization has alleged a cognizable injury. See Equal Rights Ctr. v. Post Props., Inc., 633 F.3d 1136 (D.C.Cir.2011). Litigation brought by an organization against a government entity requires that we ask, first, whether the agency’s action or omission to act “injured the [organization’s] interest and, second, whether the [organization] used its resources to counteract that harm.”[5] Id. at 1140 (quotation marks *925 omitted). Under the second prong, we have held that expenditures for “pure issue-advocacy” are insufficient for standing. See Ctr. for Law & Educ., 396 F.3d at 1162 (D.C.Cir.2005) (“Here, the only ‘service’ impaired is pure issue-advocacy.... In sum, Appellants fail to demonstrate standing. ...”); cf. Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (“[A] mere ‘interest in a problem’ ... is not sufficient by itself to render the organization ‘adversely affected’.... [I]f a ‘special interest’ in [a] subject were enough to entitle the [plaintiff] to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide ‘special interest’ organization.... ”). In other words, an organization’s “expenditure of] resources to educate its members and others regarding” government action or inaction “does not present an injury in fact.” See e.g., Nat’l Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1434 (D.C.Cir.1995) (non-profit taxpayer organization qua organization had no standing where its only expenditures to contest federal estate and gift tax rates were made to educate public and challenge legislation); Ctr. for Law & Educ., 396 F.3d at 1161-62 (organization lacked standing where alleged unlawful government action increased lobbying costs only). Instead, an organizational plaintiff must “allege impairment of its ability to provide services, [not] only impairment of its advocacy.” Turlock Irrigation Dist. v. FERC, 786 F.3d 18, 24 (D.C.Cir.2015). FWW’s sole allegation that it has made expenditures based on the challenged NPIS regime is tied to educating its members and the public.[6] In essence, FWW seeks to sound an alarm regarding the dangers of NPIS poultry. This is “pure issue-advocacy.” Ctr. for Law & Educ., 396 F.3d at 1162.
Moreover, I believe our decision in PETA is distinguishable. There, PETA made expenditures to fill a void left by the USDA when, according to PETA, the USDA unlawfully failed to apply the protections of the Animal Welfare Act, 7 U.S.C. §§ 2131 et seq., to birds. Id. at 1091. Its failure “meant, ipso facto, that the USDA was not creating bird-related inspection reports that PETA could use to raise public awareness.” Id. Thus, PETA was “required to expend resources to obtain information about .the conditions of birds ..., including through investigations, research and state and local public records requests.” Id. at 1096. PETA suffered a cognizable injury-in-fact because it spent resources to remedy alleged governmental nonfeasance, which deprived PETA of information to which it was allegedly entitled. But for the USDA’s failure to act, “PETA would not need to undertake” those efforts, id., and, on that basis, we concluded that PETA’s expenditures constituted a cognizable injury. Id. at 1097.
*926 Granted, we have found organizational standing in private-party litigation on the basis of expenditures made to educate the public. For example, in Spann v. Colonial Village, Inc., the Fair Housing Council of Greater Washington and the Metropolitan Washington Planning & Housing Association challenged allegedly racially-motivated real estate advertisements placed by realtors and advertisers, claiming the ads violated the Fair Housing Act of 1968. 899 F.2d 24, 25-26 (D.C.Cir.1990). We held that the organizations had standing because they spent funds on “endeavors designed to educate ... black home buyers and renters [and] the D.C. area real estate industry and the public that racial preference in housing is indeed illegal.” Id. at 27. But Spann also made clear that our circuit has drawn a bright-line between private-party suits and “suits against the government to compel the state to take, or desist from taking, certain action.” Id. at 30. The latter “implicate most acutely the separation of powers, which, the Supreme Court instructs, is the ‘single basic idea’ on which the Article III standing requirement is built.” Id. The former, by contrast, are “traditional grist for the judicial mill.” Id. Thus, if an.organization’s standing to pursue litigation against the government is premised only on injury flowing from expenditures to educate the public, the suit amounts to no more than an “assertion] [of] generalized grievances about the conduct of Government,” id. at 27 (quotation marks omitted), and organizational standing is lacking.
For the foregoing reasons, I concur in the judgment.

. See also Sowerwine Decl. ¶ 10, J.A. 54 ("If the USDA’s rules go into effect ... I will have to find a local farmer from whom I trust to purchase chicken and turkey.”); cf. FWW Member Pittman Decl. ¶ 10, J.A. 64 ("If the USDA's rules go into effect.... I would have to look for farmers’ markets”). Critically, the plaintiffs allege that poultry sold at farmers’ markets is "slaughtered in sanitary conditions.” See e.g., Foran Decl. ¶ 3, J.A. 48.

. FWW member Pittman alleges that “costs will go up considerably” at farmers’ markets, where "ground turkey alone is $12 per pound.” Pittman Decl. ¶ 10, J.A. 64. I find her assertion inadequate for two reasons. First, she does not mention the price of ground turkey at her grocery.store (presumably selling NPIS turkey). Second, assuming that her reference to "turkey bacon and deli meat” costing "$9 per pound” at her grocery store, id. ¶ 3, J.A. 62, results in a $3 per pound price increase in ground turkey at farmers’ markets, I cannot conclude that this threadbare price differential recital suffices to establish that “affordability for the average person” is affected. Coal, for Mercury-Free Drugs, 671 F.3d at 1283.

. Granted, Clapper was decided at the summary judgment stage, 133 S.Ct. at 1146, and here we review dismissal. Food & Water Watch v. Vilsack, 79 F.Supp.3d 174, 179 (D.D.C.2015); Maj. Op. 912-13. Although the showing necessary to establish standing varies at each stage of the litigation, see Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 132 (D.C.Cir.2006), nonetheless we can plainly uphold dismissal of claims for lack of standing, including lack of standing based on self-inflicted injury. See e.g., Fair Emp't Council of Greater Washington, Inc., v. BMC Marketing Corp., 28 F.3d 1268, 1271, 1276 (D.C.Cir.1994).

. Foreman, on the other hand, is inapposite. There, the plaintiffs challenged the FDA’s approval of the use of nitrites, whose probable carcinogenic effect was undisputed, as a bacon preservative. 631 F.2d. at 973-74. Because the plaintiffs alleged that bacon preserved without nitrites was “not readily available at a reasonable price,” id. at 974 n. 12 (emphasis added), we concluded the plaintiffs had standing.
Baur v. Veneman is similarly distinguishable. 352 F.3d 625 (2d Cir.2003). There the plaintiffs challenged the United States Department of Agriculture's (USDA) failure to "ban the use of downed livestock as food for human consumption.” Id. at 628. The court did not discuss whether the plaintiffs had any way to obtain meat that did not come from downed livestock. Here, however, the plaintiffs posit that poultry from farmers' markets does not expose them to the injury allegedly resulting from NPIS poultry. See Foran Deck ¶ 3, J.A. 48. Although Baur did not discuss the absence of alternative, and allegedly safe, meat suppliers, the Second Circuit approvingly cited Foreman for the proposition that, if an alternative is available, a plaintiff must allege that it is "not readily available at a reasonable price.” Id. at 634.

. In my view, the first prong requires only a "direct conflict” with the plaintiff organization's mission. Am. Soc'y. for Prevention of Cruelty to Animals v. Feld Entm’t, 659 F.3d 13, 25 (D.C.Cir.2011) ("First, an organization seeking to establish [organizational] standing must show a direct conflict between the defendant’s conduct and the organization's mission.” (quotations omitted)); See also PETA v. USDA, 797 F.3d 1087, 1095 (D.C.Cir.2015) (“[W]e have emphasized the need for a direct conflict between the defendant's conduct and the organization’s mission.” (quotations omitted)); Abigail Alliance, 469 F.3d at 133 ("[T]here must ... be a direct conflict between the defendant’s conduct and the organization’s mission.”). Unlike my colleagues, I believe FWW satisfies this prong. Its mission includes “maintaining strong federal inspection of poultry” and "working] to promote the practices and policies that will result in sustainable and secure food systems.” Lov-era Deck ¶ 4, J.A. 68 (reference to paragraph 4 is to second of paragraphs numbered "4”). And FWW alleges that the NPIS "threaten[s] public health and introduces] unwholesome poultry into interstate commerce.” Compl. ¶ 1, J.A. 9. Of course, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint.” Worth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). It is only because FWW's resources are spent on "pure issue-advocacy,” as explained infra, that its standing is lacking. My colleagues, I believe, have erroneously injected a prong-two consideration — i.e., what FWW has spent its money to combat — into the prong-one inquiry whether the NPIS "directly conflicts” with FWW's mission. They distinguish PETA under prong one by simply highlighting the agency's omissions. Maj. Op. 920-21. In *925 stopping at that point, they do not complete the prong-one analysis, that is, whether or not what the agency does — or, as in PETA, fails to do — is in direct conflict with the organization’s mission.
On the other hand, an organization can— and here, does — show the necessary direct conflict but nonetheless expend resources on matters we have said do not support standing, e.g., issue advocacy. Otherwise, our two-pronged inquiry merges into one prong.

. See Lovera Decl. ¶ 11-13, J.A. 70-71 (explaining that FWW plans to "educat[e] the general public and its members that the NPIS rules do not allow for the inspection of poultry product prescribed by the [Poultry Products Inspection Act],” "educate members of the public that just because a poultry product has a USDA inspection legend does not mean that it is not adulterated” and "increase the amount of resources that it spends encouraging its members who wish to continue to' eat chicken to avoid poultry from such companies”).